Shelburne Falls National Bank *v.* Townsley.

SHELBURNE FALLS NATIONAL BANK *vs.* WILLIAM P. TOWNSLEY.

There is no presumption of law that a drop-letter was deposited in the post-office on the day of the date of its postmark.

When notices of the protest of a promissory note, addressed to the several indorsers, are sent by the notary, by mail, from the place where the note was payable, in one inclosure addressed to the last indorser at another place, such last indorser, in order to charge a prior indorser by forwarding such notice to him, through the post-office, in a drop-letter addressed to him at said last place, (there being no system of letter-delivery by carriers in that place) must deposit the drop-letter in the post-office on the same day he receives it from the notary.

CONTRACT on two promissory notes signed by Charles W. Stockbridge, payable to the order of Franklin Ballard, indorsed by Ballard and the defendant, and discounted by the plaintiffs for Ballard. The answer set up want of notice to the defendant of the presentment and dishonor of the notes. Trial in the superior court before *Devens,* J., who allowed the following bill of exceptions:

" It appeared that the defendant was an accommodation indorser at the request of Ballard, and for his benefit, and that this fact was known to the bank when the notes were discounted. The only question submitted to the jury was, as to the sufficiency of the notice to the defendant of the dishonor of the second note. This note was dated April 5, 1866; was payable at the office of the maker, in the city of New York, in three months from its date; and was protested in New York on July 7, 1866, July 8 being Sunday.

" To prove notice to the defendant of the dishonor of the note, the plaintiff, in addition to testimony tending to show that the defendant, in several interviews on the subject of payment, did not object to any want of notice, or claim that he was not notified, introduced the following evidence from the deposition of George W. Warren, cashier of the plaintiff bank : ' In due course of mail after the maturity of said notes and each of them, I received from Myron Winslow, a person representing himself in the notices to be a duly qualified notary public in New York, on different dates, notices of the nonpayment of

each of said notes.   There were three notices relating to each of said notes, which were respectively addressed to Franklin Ballard, William P. Townsley, and myself as cashier of the bank.   Said notices were in writing or print.   I cannot give the exact date when said notices and each of them were by me sent to Townsley, but they were, upon the receipt of the same from Winslow as stated, immediately sent by me to Townsley.   They were each put in the Shelburne Falls post-office, and were directed, as nearly as I can remember, respectively thus, " Wm. P. Townsley,. Esq., Shelburne Falls, Mass." '

" The plaintiffs also introduced the testimony of Alfred Bowen, postmaster at Shelburne Falls at the time of the dishonor of said note and since, who testified that, at that time, the defendant lived in Buckland, about half way between the post-offices of Shelburne Falls and Buckland, was in the habit of visiting Shelburne Falls constantly and frequently, and was in the habit of receiving mail matter at that post-office as well as at Buckland ; and further stated, ' We got our mails at Shelburne Falls from New York in the evening.'   The witness, on cross-examination, stated that, in 1866, ' due course of mail ' from New York City would bring a letter leaving New York by the early morning's mail to Shelburne Falls the same evening ; and this was the only evidence in the case on this point.

" The defendant testified that he received the notice of the dishonor of the note at the Shelburne Falls post-office, and that he could not state the day of its reception ; and on cross-examination said, ' I never knew (or said) but I was notified all right, I didn't know.'   He further testified that Warren, the cashier, knew his residence at the time of the dishonor of the note ; and that he received letters at both the post-offices named, no more at one than the other, though Buckland, as his residence, he considered his true post-office address.   He then produced the notice received on the dishonor of the note, and the envelope in which it was received.   The notice was in due form, and was dated ' New York, July 7, 1866.'   The envelope was addressed ' Wm. P. Townsley, Esq., Shelburne Falls, Mass.,' and bore the postmark ' Shelburne Falls, Mass., July 12, 1866.'   It was stamped

on the face with a three cents postage stamp, and bore on the back a seal or stamp of the plaintiff bank.

" The defendant asked the judge to rule that the notice addressed and mailed by Warren to the defendant at Shelburne Falls was not a sufficient notice. This he refused to rule ; but instructed the jury that, if the defendant was in the habit of receiving letters at both of the post-offices named, the notice would be sufficient, if addressed and mailed to him at Shelburne Falls. To this ruling the defendant excepted.

" The plaintiffs' counsel argued to the jury, that the plaintiffs' cashier acted with due diligence, if he placed the notice in the office on July 11; and that, if he did so, it might bear the postmark for the mail of the 12th. The defendant's counsel, at the close of the charge, (to which no exception was taken save as above,) requested the court to rule that the legal presumption is that the date of the postmark on a drop-letter is that of the day it is placed in the post-office ; which ruling the judge refused to give, but left the fact that such was the postmark upon the letter as one to be considered in determining whether the notice was actually mailed.

" The judge had previously instructed the jury that the plaintiffs must satisfy them that the notices were seasonably forwarded by the notary in New York to the cashier of the plaintiff bank, and by the cashier, after the reception thereof, seasonably put into the post-office directed as above ; that the burden of proof was upon the plaintiff all the way through ; and that, if the notices were received by the plaintiff bank before the 11th, the jury must be satisfied that notice was put into the post-office prior to the 12th, as indicated by the postmark upon the envelope introduced by the defendant."

The jury found for the plaintiffs ; and the defendant alleged exceptions.

*D. Aiken & W. S. B. Hopkins,* for the defendant.

*S. T. Field,* for the plaintiffs.

AMES, J.    It is not necessary, in order to charge all the indorsers of a dishonored bill or promissory note, that notice should be transmitted to them simultaneously. They may all be made

severally liable by notices given in regular succession by each indorsee to his immediate indorser. It is also unnecessary, in order to make these notices effectual, that each party receiving such a notice should lay all other business aside for the purpose of transmitting a like notice to his immediate predecessor. On the contrary, it is well settled that each party so notified is sufficiently diligent, for the purpose of charging his immediate indorser, if he transmits a suitable notification on the next day. *Grand Bank* v. *Blanchard*, 23 Pick. 305. *Housatonic Bank* v. *Laflin*, 5 Cush. 546, 550. The case before us was apparently tried upon the assumption that the official notifications prepared by the notary were seasonably forwarded from New York and received by the plaintiffs; and the whole controversy was as to the sufficiency of the notice which they undertook to give to the defendant.

Upon this point, the testimony of the plaintiffs' cashier was to the effect that, immediately upon the receipt of the notification by mail from the notary public, it was sent to the defendant. He said, however, that he could not tell on what day he sent it, and the testimony of the postmaster renders it at least possible that it may have come to the hands of the cashier as early as the tenth day of July. There is nothing, then, in the report of the case, that can be said to make it certain that the notification was forwarded immediately to the defendant, or to exclude the idea that it may have been delayed till the next day. The mode of forwarding it was by inclosing it in an envelope, left at the post-office in Shelburne Falls, addressed " Wm. P. Townsley, Esq., Shelburne Falls, Mass.," and this envelope was postmarked " Shelburne Falls, July 12," the note having matured and been protested, at New York, on Saturday, July 7.

The presiding judge ruled that this was a sufficient notice, provided the defendant was in the habit of receiving letters at Shelburne Falls post-office, as well as at the village where he resided. The plaintiffs' argument at the trial seems to imply that a notification left at the post-office on the 11th, to be received on the 12th, would be seasonable; and the presiding judge appears, from the report, to have acquiesced in that claim.

We must consider the verdict of the jury as decisive upon the point that the letter was left in the post-office on the 11th. The defendant claimed at the trial that, inasmuch as the letter was postmarked July 12, there was a legal presumption that it was not deposited in the post-office until that day. The presiding judge refused so to rule, and in our opinion was right in that refusal. A letter deposited on the 11th might happen not to be noticed or stamped until the 12th. It was sufficient, on this point, to instruct the jury that the postmark was one of the circumstances to be taken into consideration, with others, in deciding whether the letter was actually left on the 11th, or not till the 12th.

It is well settled, that where the transaction, of which notice is to be given, takes place in the same town in which the party to whom the notice is to be given resides, such notice must be personal, or at his domicil or place of business, and not through the post-office. *Peirce* v. *Pendar*, 5 Met. 352. Chit. Bills, (12th Am. ed.) 473, and cases cited. It is also well settled, that, when the party resides in another town, notice by the post-office is sufficient, (*Munn* v. *Baldwin*, 6 Mass. 316,) and conclusive, even though it was in fact never received. *Shed* v. *Brett*, 1 Pick. 401. In this case, the transaction occurred in New York, and not in Buckland, where the defendant resided. The letter, however, in which the plaintiffs undertook to give the notice, was addressed to the defendant, not at Buckland, but at Shelburne Falls, and the report shows that he was in the habit of receiving letters at the post-offices of these two places respectively, and about as often at one as at the other. The question as to the proper mode of notifying a man by mail depends much less on the place of his exact legal domicil than upon the locality of the post-office at which he usually receives his letters ; and if he is in the habit of resorting, for that purpose, equally and indifferently to two post-offices, a communication may very properly be addressed to him at either. *United States Bank* v. *Carneal*, 2 Pet. 543. Story on Notes, § 343. The plaintiffs appear to have put him on the same footing, for the purpose of post-office communication, as if he were a resident of Shelburne

Falls. The letter was left at the post-office, not for the purpose of being transmitted by mail to any other town or post-office; and not to go into the hands of any official carrier charged with the distribution of letters at the dwelling-houses and places of business of inhabitants of the vicinity; on the contrary, it did not go into the mail at all, but was simply deposited at the Shelburne Falls post-office, to remain there until called for by the defendant.

We do not find that any case has gone so far as to decide that notice through the post-office may be given in the same manner and with the same allowance of time, where both parties reside in one town or resort to the same post-office, as when they reside in different towns, communicating with each other by regular mails. There may be very little practical difference in this respect between letters left for deposit and those left for transmission. But we do not feel at liberty, for such considerations, to disregard well established distinctions, even though they may appear somewhat arbitrary; or to attempt to improve rules that have become settled by judicial decisions and the usages of business. It has been decided expressly in New York, that, where the indorser resides in the same town or village as the holder, service of notice through the post-office is irregular. *Ransom* v. *Mack*, 2 Hill, 587. " The post-office is not a place of deposit for notices to indorsers, except where the notice is to be transmitted by mail to another office." *Sheldon* v. *Benham*, 4 Hill, 129, 133.

The case of *Eagle Bank* v. *Hathaway*, 5 Met. 212, has an important bearing upon the case at bar. That was the case of a bill, presented to the acceptor in Philadelphia, and protested for nonpayment. The notary, as in the case at bar, made out his written notifications for the successive indorsers, and sent them by mail to the plaintiffs at their place of business. Their cashier sent the notices to the post-office, one of them being addressed to the defendant at the same place. Chief Justice Shaw in delivering the judgment of the court, uses this language: " On the whole, as the transaction to be notified to the defend ant took place in Philadelphia; as notice to him by mail from

there " " would have been good ; as the cashier was the conduit of conveyance, and not the party from whom the notice emanated; as the defendant, if he were looking for notice of the dishonor of this bill of exchange payable in Philadelphia, would naturally look to the post-office for that notice ; we are of opinion that notice by the post-office under these circumstances must be deemed good." That case, however, differs from the one before us, in showing that the notification was left by the cashier at the post-office on the day of its reaching his hands, and that it must have reached the defendant as early as if it had been directed and sent to him by mail from Philadelphia; so that substantially he was notified by the notary in regular course of mail. But, considered as an independent notice, emanating from an indorser, who, by being himself properly notified, has become chargeable, and desires to notify his immediate indorser, and thereby to hold him, a notice by a drop-letter, given on the next day, finds little or no support in that case. In the instructions which were given to the jury, this distinction appears to have been overlooked, and they may have given their verdict under the impression that a drop-letter left at the post-office after the close of the business day on the 11th, and not likely to be received until the 12th, would be seasonable, even though the plaintiff bank had received the notice itself as early as the 10th : in other words, that the rule as to post-office notification, where both parties reside in the same town or village and resort to the same post-office, and where no system of distribution by means of letter carriers has been established, would be the same as if they lived in separate towns having regular communication by mail. Upon this point, therefore, the defendant's

*Exceptions must be sustained.*