R. M. FORBES, PLAINTIFF IN ERROR, v. THE OMAHA NATIONAL BANK, DEFENDANT IN ERROR.

Commercial Paper: NOTICE TO INDORSER BY DEPOSITING SUCH NOTICE IN THE POST-OFFICE. The district court to whom the cause was tried found: "That the said S. H. and R. M. F. were respectively duly notified of such presentment, non-payment, and refusal, and that the plaintiff would look to them respectively for payment of the same, with damages and costs. That at the time of such presentment and notification the said R. M. F. resided about one mile or one and a quarter miles outside of the corporate limits of the city of Omaha, in the state of Nebraska, where the said bank was located and did

business, and said draft was payable, and where the notary hereinafter mentioned resided, and that said R. M. F. had no regular or usual place of business in said city; that the post-office at which he then obtained his mail was the post-office in the city of Omaha, and which was the nearest post-office to his residence and about three miles therefrom; that on the evening of October 23, 1871, when the note was presented for payment, one W. W., a notary public and agent of the plaintiff's bank, deposited in the post-office at Omaha notice in due form of the presentment and dishonor of said draft, and that plaintiff would look to him for payment thereof, directed to the said R. M. F. at the post-office in Omaha, with the postage thereon paid." *Held*, That such facts are insufficient to charge R. M. F. as indorser.

ACTION in the district court of Douglas county upon a draft dated July 22, 1871, for $5,000 drawn by S. Hawver on George W. Forbes, payable to the order of R. M. Forbes, 90 days from date, accepted by George W. Forbes, "payable at the Omaha National Bank twenty-third of October, 1871." R. M. Forbes was merely an accommodation indorser for the other parties. Upon the finding as set forth in the opinion, the court, by SAVAGE, J., gave judgment against R. M. Forbes, who brought these proceedings in error.

*George W. Doane*, for plaintiff in error, cited Story on Prom. Notes, sec. 322. Edw. on Bills, pp. 602, 603. *Ransom v. Mack*, 2 Hill, 587. *Sheldon v. Burham*, 4 Hill, 129. 5 Hill, 236. *Ireland v. Kip*, 10 Johns., 490. *Same Case*, 11 Johns., 231. *Eddy v. Jump*, 6 Duer, 492. *La Porte v. Laudry*, 5 La., 359. *Louisiana St. Bank v. Rowell*, 6 Martin, 506. *Patrick v. Beasley*, 6 How. (Miss.), 609. *Clay v. Oakley*, 5 Martin (La.), 139. *Shelburn Nat. Bank v. Townsley*, 102 Mass., 177. *Farmers' Bank v. Battle*, 4 Humph., 86. *Barker v. Hall*, Mart & Yerg, 183. *Hogatt v. Bingaman*, 7 How. (Miss.), 568. *Bowling v. Harrison*, 6 How. (U. S.), 243.

*E. Wakeley*, for defendant in error, cited *Bank v. Lawrence*, 1 Pet., 578.   *Jones v. Lewis*, 8 Watts & Serg., 14.   *Timms v. Delisle*, 5 Blackf., 447.   *Bell v. Bank*, 7 Id., 457.  *Forbes v. Smith*, 2 Rich. (S. C.), 338.   *Walker v. Bank*, 8 Mo., 704.   *Barrett v. Evans*, 28 Mo., 323. *Bank v. Everett*, 1 Met. (Ky.), 658.

Cobb, J.

Several questions are presented by the record in this case; but as one of them appears to me to quite over-shadow the others in point of importance, and the conclusion reached in its examination being decisive of the case, I deem it unimportant to consider the others.

The district court found " that the said Samuel Haw-ver and R. M. Forbes were respectively duly notified of such presentment, non-payment, and refusal, and that the plaintiffs would look to them respectively for payment of the same, with damages and costs.

" That at the time of such presentment and notifi-cation the said R. M. Forbes resided about one mile, or one and a quarter miles, outside of the corporate limits of the city of Omaha, in the state of Nebraska, where the said bank was situated and did business, and said draft was payable, and where the notary hereinafter mentioned resided, and that said R. M. Forbes had no regular or usual place of business in said city; that the post-office at which he then ob-tained his mail was the post-office in the city of Omaha, and which was the nearest post-office to his residence, and about three miles therefrom.

" That on the evening of October 23, 1871, when the note was presented for payment, one William Wallace, a notary public and agent of the plaintiffs' bank, deposited in the post-office at Omaha notice in

due form of the presentment and dishonor of said draft, and that plaintiff would look to him for payment thereof, directed to the said R. M. Forbes at the post-office in Omaha, with the postage thereon paid."

Thus, while the court finds that the said Samuel Hawver and R. M. Forbes were respectively duly notified of such presentment, non-payment, refusal, etc., it does not fail to put us in possession of the facts upon which it bases such finding, so far as the plaintiff in error is concerned; and the question, whether such facts do sustain the finding that the plaintiff in error was duly notified, is in my opinion the controlling one in this case.

While the evidence of the fact of the depositing of the notice in the post-office is not by any means clear, yet, as the same was deemed sufficient by the trial court, I will confine my examination to the question whether such fact, taken in connection with the collateral facts and circumstances surrounding this case, constitutes legal notice.   This question has often been before the courts of several of the states of the Union, and once before the supreme court of the United States.   It has not been previously brought before this court, and as the views and decisions upon it of the several state and federal courts are altogether conflicting and irreconcilable, this court should be free to decide it in this case, as may seem most likely to meet the ends of justice, and at the same time establish a precedent the least liable to lead to unfairness or abuse.

The question may be fairly stated thus: whether, where the drawer or indorser of a draft, note, or bill of exchange resides outside of the corporate limits of a city or village, which is the place of dishonor of such draft, note, or bill of exchange, but nearer to the post-office in such city or village than to any other

post-office, notice of the dishonor of such draft, note, or bill of exchange can be legally given to such drawer or indorser by depositing the same in such post-office, directed to such drawer or indorser.

In the case of *Ireland v. Kip*, which was twice before the supreme court of the state of New York (10 Johns., 489, in 1813; and 11 Id., 231, in 1814), it was held that, where the indorser to be charged resided at Kip's Bay, within the corporate limits of New York City, but ouside of the compact portion of the city, and where the letter-carriers did not deliver letters, but had a place of business on Frankfort street, within the compact part of the city, where he had directed the letter-carriers to leave all of his letters, and the notice of dishonor was put into the post-office in New York City, directed to the indorser at his place of business on Frankfort street, the same was not sufficient notice of the dishonor of the bill to charge the indorser. In the opinion the court uses this language: "The invariable rule with us is that when the parties reside in the same city or place, notice of the dishonor of bills or notes must be personal, or something tantamount, such as leaving it at the dwelling-house or place of business of the party, if absent. If the party to be served by a notice resides in a different place or city, then the notice may be sent through the post-office to the post-office nearest the party entitled to the notice." The authority of this case has never been shaken; but unfortunately, when the courts came to apply it to cases like the one at bar, they separated widely; the supreme courts of New York, Connecticut, Massachusetts, Maine, Louisiana, and Tennessee, holding in effect that the words city or place, as used by the court in *Ireland v. Kip*, should be understood as meaning the place in fact rather than in law, and that the indorser or maker entitled to notice of dishonor must

be served personally, or by leaving the notice at his residence or place of business, unless he resides nearer to some other post-office, in which case notice may be sent to him by mail.

Say the court, per BRONSON, J., in *Babcock v. Burnham*, 4 Hill, 129: "* * The post-office is not a place of deposit for notices to indorsers, except where the notice is to be transmitted by mail to another office."

In *Ransom v. Mack*, 2 Hill, 587, the same judge, in delivering the opinion of the court, uses the following language: "The corporation limits of our cities and towns have, I think, less to do with this question than the mail arrangements of the general government, and the business relations of our citizens. Whether mail service is good or not does not depend upon the inquiry whether the person to be charged resides within the same legal district, but upon the question whether the notice may be transmitted by mail from the place of presentment or demand to another post-office where the drawer or indorser usually receives his letters and papers."

In the case of *The Shelbourne Falls National Bank v. Townsley*, 102 Mass., 177, decided in 1869, AMES, J., delivering the opinion of the court, says: "The letter was left at the post-office, not for the purpose of being transmitted by mail to another town or post-office, and not to go into the hands of any official carrier charged with the distribution of letters at the dwelling-houses and places of business of the inhabitants of the vicinity; on the contrary, it did not go into the mail at all, but was simply deposited at the Shelbourne Falls post-office, to remain there until called for by the defendant.

"We do not find that any case has gone so far as to decide that notice through the post-office may be given in the same manner, and with the same allowance of

time, where both parties reside in one town, or resort to the same post-office, as where they reside in different towns communicating with each other by regular mails. There may be but little practical difference in this respect between letters left for deposit and those left for transmission. But we do not feel at liberty for such considerations to disregard distinctions, even though they appear somewhat arbitrary, or attempt to improve rules that have become settled by judicial decisions and the usage of business. * * In the instructions which were given to the jury this distinction appears to have been overlooked, and they may have given their verdict under the impression that a drop-letter left at the post-office after the close of the business day on the 11th, and not likely to be received until the 12th, would be reasonable notice, even though the plaintiff bank had received the same as early as the 10th; in other words, that the rule as to post-office notifications, where both parties reside in the same town or village and resort to the same post-office, and where no system of distribution by means of letter-carriers has been established, would be the same as if they lived in separate towns having regular communication by mail. Upon this point, therefore, the defendant's exceptions must be sustained."

In the case of the *State Bank v. Rowell,* 6 Martin (N. S.), 267, the supreme court of Louisiana by Porter, J., who delivered the opinion, say " * * * The case has been well argued, but the reasoning of the counsel, in our opinion, rested entirely on an incorrect view of the obligation contracted by an indorser of instruments of this kind. The obligation which such an act creates is strictly a conditional one, and that condition is that he will pay the money in case the maker does not, provided due notice is given to him of the default of the former. By the *lex mercatoria* this fact must be

proved by establishing that knowledge, of the failure of the principal to pay was communicated personally to the indorser, or that information to that effect was left at his house. A relaxation of this rule has been introduced for the convenience of trade, when the indorsers live at such a distance that their residence is nigher another post-office than where the holder lives; in such cases it is sufficient to send by mail a notice directed to the indorser."

All of these cases, and many others cited in the brief of counsel, seem to hold that where the person whose duty it is to give the notice and the one to be charged by the notice both reside within the same post-office delivery—a term well understood in this country—that then the notice must be served personally, or left at the residence or place of business of the person to be charged, and that the post-office can only be resorted to in cases where the person to be notified resides nigher to, or is in the habit of receiving his mail matter at another post-office, to which the notice may be sent by mail. And this I believe to be the correct rule.

It is true there are many decisions the other way, and as a question of authority, it would be one quite difficult to decide. The supreme court of the United States, and those of Pennsylvania, Indiana, Missouri, and, as is claimed, South Carolina, have held to the contrary—that when the person to be notified resides outside of the legal limits of the town, city, or village where the party giving the notice resides, but nigher thereto than to any other post-office, or is in the habit of resorting to the post-office in such town, city, or village for mail matter, that then the notice may be legally served on him by depositing the same in such post-office, directed to the party to be notified at the post-office where the same is deposited.

In enumerating the states where this question has

been decided either way, I do not include Kentucky, because that state is about equally divided on the question. The former view having been taken by the old supreme court presided over by C. J. John Boyle in 1832, and the latter by the supreme court of that state in 1858 in an exhaustive opinion by Judge Stiles. Nor do I include Mississippi, where the question has been several times before the supreme court, and where, unfortunately, the holdings have not been uniform. But their latest two, and I think, best reasoned cases follow New York, Massachusetts, &c.

But all the cases, as well those which hold the latter as the former view, agree in this, that where the person to be notified resides *in* the same city or village with the person whose duty it is to give the notice, then notice cannot be given through the post-office.

Having carefully examined all of the cases cited by counsel, I have failed to find any sufficient reason, or indeed any reason, for a distinction in this respect between persons residing within the city or village limits and those who, though living outside of such limits, are within the post-office delivery.

Had this court the power to change the law it might be worth considering whether it would not be well to provide that all notices might be served through the post-office. But were any change in that direction contemplated certainly no one would think of excluding from its operation only those who, from the contiguity of their residence to the post-office as well as from the nature of their business pursuits, are the most unlikely to be incommoded by such change. Those inhabitants of a city or village who are at all likely to draw or indorse commercial paper generally keep themselves in daily intercourse with the post-office, and when not absent from home would nearly always receive a notice posted to them at their own

post-office the same or the next day. But this cannot be said of those who live in the country. They as a rule seldom go to the post-office oftener than once a week to receive their weekly newspaper, or less often, as called for by the needs of family correspondence. Persons thus situated would not generally receive a notice of protest through the post-office in time to answer the purposes for which notices are required, to-wit: to give the indorser or drawer a fair start with others in pursuit of the property of a defaulting principal. Again, the inhabitants of cities and villages who draw or indorse commercial paper are as a rule business men, who do it as a part of their regular business, and carefully note and watch the dates of the maturity of such paper, and whether or not it is duly honored. While many farmers and other inhabitants of the country are in the habit of becoming accommodation indorsers for business men, they keep no dates, but rely confidently on their principal to protect their paper. To such, a prompt and certain notice of dishonor often may save them from ruin.

It is true that the rule is well settled that where the person entitled to notice resides so far away from the place of dishonor that his place of residence is nearer to another post-office, or where he habitually resorts to another post-office for mail matter, then notice may be sent to him by mail. This arises from the nature and necessities of the case; and besides, it is a fair presumption, where a person draws or indorses commercial paper payable at a distant bank or place, that he thereby impliedly agrees to receive notice of its dishonor through the post-office, the usual channel of communication between distant points. But not so an indorser of paper payable at a bank situated within his own post-office delivery.

In most of the cases where the courts have come to a conclusion different from that which I have been able to reach in the examination of this question, they give as a controlling reason for such conclusion that to require personal notice or its equivalent to indorsers residing outside of the limits of cities and villages would be to lay an additional burthen upon the holder. I am unable to accord much weight to this reason. Notaries' fees for protest and notice, including mileage, follow the protested paper; and the costs of sending a notary or special messenger to serve a notice anywhere within the delivery of any post-office in the settled portion of the country would be but trifling compared to the amount generally involved, and I think it affords a fair application of the maxim, *de minimis non curat lex.*

As to the point that, although the plaintiff in error may not have been legally notified, he afterward waived such notice, I have only to say that no such waiver was found by the district court, and had it been I do not think that there was sufficient evidence to have sustained it.

The judgment of the district court is therefore reversed and a new trial ordered.

REVERSED AND REMANDED.