# Wytheville.

## BROWN v. BANK OF ABINGDON.

### July 26th, 1888.

1. NEGOTIABLE INSTRUMENTS—*Dishonor—Notice—General Rule.*—When he that has to give, and he that is chargeable with, notice, reside within the same post-office delivery, the general rule is that notice must be delivered to the latter, or left at his residence or place of business.

2. IDEM—*Post-Offices—Usage.*—In the absence of a usage of the bank known to endorser at the time of endorsement, to send through the post-office notices to endorsers living outside the town, but in the vicinity, post-offices are not places to deposit notices to endorsers, except where the same are to be transmitted by mail to another post-office.

3. IDEM—*Case at Bar.*—Endorser resided just outside corporate limits. No notice was served on him in person, or left at his residence or place of business. But notice directed to him was dropped into the post-office, without proof of bank's usage, known to endorser when he endorsed, so to send notices to persons living outside but near the town.

HELD:

    Not sufficient to charge endorser.

Error to judgment of circuit court of Washington county, entered on the 26th day of July, 1886, in an action of debt brought by the Bank of Abingdon, as plaintiff, against the plaintiff in error, and certain other parties, as defendants. The judgment of the court was for the plaintiff, and the defendant applied for and obtained from one of the judges of this court a writ of error and *supersedeas.* The opinion fully states the case.

*Daniel Trigg,* for plaintiff in error.

*Fulkerson & Page,* for defendant in error.

FAUNTLEROY, J., delivered the opinion of the court.

This suit was upon a protested negotiable note for $968.15, including the charges of protest.   Upon the said note the plaintiff in error, William I. Brown, is the fourth and last endorser. Judgment by default was entered against the maker and the three prior endorsers, at the May term, 1886.   The defendant, William I. Brown, pleaded *nil debet*, upon which issue was joined by the plaintiff, and he offered five special pleas, which were each and every one objected to by the plaintiff, and thereupon the court sustained the objection to each of the said pleas, and refused to allow the same, or either of them, to be filed, holding that the fifth plea aforesaid was sufficient, except that it should conclude, not to the country, but with a verification.   Upon the trial of the cause upon the issue joined, the jury found a special verdict, and the "court having maturely considered the said special verdict and the matters of law arising thereon, finds that the law is for the plaintiff," and entered a judgment against the defendant for the sum of $968.15, with interest thereon from the 16th day of January, 1884, till paid, and the costs, $13.32.

In the petition for the writ of error there are two assignments of error—first, the rejection by the court of the special pleas, numbers 1, 2, 3 and 4; and, secondly, the entering of judgment by the court in favor of the plaintiff, upon the special verdict. We will consider only the second assignment of error, which raises the question of the legality and sufficiency of notice to the defendant, William I. Brown, who is the fourth and last endorser upon the note sued on, as this question, in the view which we take of the case made by the facts found by the special verdict, disposes fully and finally of the case, so far as the plaintiff in error is concerned.

At the maturity of the note sued on, to-wit: on the 16th day of January, 1884, the said note was duly presented for payment at the Bank of Abingdon, the place where it was made payable, and payment of the same was regularly and properly demanded,

which was refused; and thereupon the said note was protested for non-payment. T. K. Trigg, the maker of said note, and Francis S. Trigg, Anna D. Trigg, and Sally M. Trigg, the first, second and third endorsers, were regularly and duly notified of said protest by personal service of said notice; but the notary public who protested the said note, placed a copy of the said notice in the post-office in Abingdon, addressed, in a sealed envelope, to the defendant, William I. Brown, Abingdon, Virginia, who was the fourth endorser on the said note, and whose post-office is Abingdon, Virginia. No personal service of notice was made on said Brown, nor was any inquiry made, or notice left at either his residence or his place of business, though both were close by—his residence only 208 yards from the post-office on the same street extended, though just outside the then actual corporate limits of the town of Abingdon—163 yards from the said corporate line. At the date of the protest of the said note, the defendant, Brown, was temporarily absent from his residence, where his family remained, he being in the city of Louisville, Kentucky, on the 16th day of January, 1884, whence he returned to his home in about ten days. The fact is explicitly stated in the special verdict, that the said Brown, "defendant, did not receive any notice through the mail, or otherwise, of said protest, and that he never heard that the said note had been protested until the 23d day of May, 1885 (over sixteen months from the day of the said protest), at which time his attention was called to the note by J. S. O'Neale, cashier of the Bank of Abingdon." Said Brown, at the time he endorsed the said note, had no knowledge of any usage of the plaintiff of sending notices of protest through the post-office to persons living outside of the town, but in the vicinity. By an act of the legislature, approved March 4th, 1884, the corporate limits of the town of Abingdon were extended, and the residence of the said Brown, though on the 16th day of January, 1884, just outside the actual legal limits of the town, is now, and was on the 4th day of March, 1884, within the limits of said town, both his residence and his

place of business being on the main street, on which the post-office is, and only 208 yards distant from it. His family were at his residence, and his place of business was open and his book-keeper in attendance there during business hours.

We are of opinion that the circuit court erred in entering judgment for the plaintiff, upon the facts found by the special verdict. The defendant, Brown, as endorser upon the note sued on, never had any legal notice of the protest, and he did not, in fact, ever receive, or hear of, for more than sixteen months thereafter, the drop-letter notice deposited in the post-office at Abingdon, and if he had, even this would have been insufficient, living as he did in close proximity to the bank which was the holder of the note, and in the same place—in fact, though not within the actual corporate limits of the then old, original, legal line of the town. He was entitled to personal service of notice, and notice by drop-letter in the post-office of the town, without any special carriers for delivery of mail matter, was not good as a substituted service of notice.

"If the parties reside in the same city or town, the indorser must be personally noticed of the dishonor of the bill or note, either verbally or in writing, or a written notice must be left at his dwelling-house or place of business." (*Williams* v. *United States Bank*, 2 Peters, 101.) Mr. Justice Story states the rule in these words: "Where the party entitled to notice and the holder reside in the same town or city, the general rule is that the notice should be given to the party entitled to it, either personally, or at his domicile, or place of business." (Story on Bills, sec. 312.) In the case of *Bowling* v. *Harrison*, 6 Howard (U. S.), 257, Mr. Justice Grier, delivering the opinion of the court, said: "The best evidence of notice is proof of personal service on the party to be affected by it, or by leaving a copy at his dwelling. Depositing a notice in the post-office affords but presumptive evidence of its reception, and is permitted to be substituted for the former only where the latter would be too inconvenient or expensive. Hence, when the convenience of the public post

is not needed for the purposes of transmission or conveyance, there is no reason for its use, or for waiving the more stringent and certain evidence of notice; and, therefore, in the practical application of the rule, the relative position of the person giving the notice, and the party receiving it, forms the *only criterion* of the necessity for relaxing it. A very large portion of the commercial paper used in this country is similar to that which is the subject of the present suit. They are notes made payable at a certain bank. The last indorsee or owner transmits it to that bank for collection; if funds are not deposited there to meet it when due, it is handed to a notary or agent of the bank, who makes demand and protest, and gives notice of its dishonor to the endorsers. If they live in the same town or city where the bank is situated and the demand made, and 'where the note was payable,' he serves it personally, or at their residence or place of business. If they live at a distance, so that such a service would be inconvenient and expensive, he sends the notice by mail to the nearest post-office, or such other place as may have been designated by the party on whom it is to be served. This is, and has been, the daily practice and construction of the rule in question over the whole country, and the only one consonant with reason." "It is of the utmost importance to commercial transactions that the rules of law on the subject of notice which is to charge an indorser, be stable and certain, and not suffered to fluctuate and vary with the notions or caprice of banking corporations or village notaries. A usage, to be binding, should be definite, uniform, and well known, * * * * so that it may be justly presumed that the parties had reference to it in making their contract. Every day's experience shows that notaries, in many places, fall into loose ways of performing their duties, either through negligence or ignorance, and courts should be cautious how they encourage juries to presume usages and customs contrary to the settled rules of law, in order to sanction the mistakes or misconceptions of careless or incompetent officers." "It is dangerous, in all cases, to disregard the well-settled law upon

this subject, and rely upon custom and usage, because no usage or custom can change the rule here laid down, unless the party to be affected be cognizant of the usage, and has in other cases conformed to it." *Wilcox* v. *McNutt*, 32 Amer. Dec. 304, citing 4 Mass. 252, 258, 157.

In the case of *Forbes* v. *National Bank of Omaha,* (10 Neb.) 35 Amer. Reports, 480, the court say: " The question may be fairly stated thus—whether, where the drawer or indorser of a draft, note, or bill of exchange, resides outside of the corporate limits of a city or village, which is the place of dishonor of such draft, note, or bill of exchange, but nearer to the post-office in such city or village than to any other post-office, notice of the dishonor of such draft, note, or bill of exchange can be legally given to such drawer or indorser by depositing the same in such post-office, directed to such drawer or indorser? "

After citing, and quoting from, and commenting on, the cases of *Ireland* v. *Kip*, which was twice before the supreme court of New York (10 Johns. 489, in 1813, 11 Johns. 231, in 1814); *Babcock* v. *Burnham*, 4 Hill, 129 ; *Ransom* v. *Mack*, 2 Hill, 587 ; *Shelburne Falls National Bank* v. *Townsley*, 102 Mass. 177 ; *Louisiana State Bank* v. *Rowell*, 6 Mart. (N. S.) 267, the court says: " All of these cases, and many others cited in the brief of counsel, seem to hold that, where the person whose duty it is to give the notice, and the one to be charged by the notice, both reside within the same post-office delivery—a term well understood in this country—that then the notice must be served personally, or left at the residence or place of business of the person to be charged ; and that the post-office can only be resorted to in cases where the person to be notified resides nigher to, or is in the habit of receiving his mail matter at, another post-office, to which the notice may be sent by mail. And this I believe to be the correct rule. Having carefully examined all the cases cited by counsel, I have failed to find any sufficient reason, or, indeed, any reason, for a distinction, in this respect, between persons residing within the city or village limits, and those who,

though living outside of such limits, are within the post-office delivery."

In the case of *Clay* v. *Oakley*, 5 Mart. (N. S.) 139, the notice was left in the post-office at Alexandria, directed to the indorser at that place; and the supreme court of Louisiana held it to be insufficient, saying, it made no difference whether he resided in or out of the town. See *Bank* v. *Rowell*, 6 Martin (N. S.) 508; *Reid* v. *Payne*, 16 Johns. 218 (8 Amer. Dec. 311).

In *Babcock* v. *Burnham*, 4 Hill, 129, Bronson, J., says: "The post-office is not a place of deposit for notices to indorsers, except where the notice is to be transmitted by mail to another office." In *Ransom* v. *Mack*, 2 Hill, 587, the same judge delivering the opinion of the court, says: "the corporation limits of cities and towns have, I think, less to do with this question, than the mail arrangements of the general government, and the business relations of our citizens."

In the case of *Shelburne Falls National Bank* v. *Townsley*, 102 Mass. p. 177, Ames, J., delivering the opinion of the court, says: "We do not find that any case has gone so far as to decide that notice through the post-office may be given in the same manner, and with the same allowance of time, where both parties reside in one town, or resort to the same post-office, as where they reside in different towns communicating with each other by regular mails. There may be but little practical difference, in this respect, between letters left for deposit and those left for transmission; but we do not feel at liberty, for such considerations, to disregard distinctions, even though they appear somewhat arbitrary, or attempt to improve rules that have become settled, by judicial decisions and the usage of business."

In the case of *Patrick* v. *Beazley* (6 Howard, Miss. 609), 38 Amer. Dec. 456, the court say: "The courts have manifested a constant jealousy of admitting relaxations of the rule which requires personal service of notice, and have never permitted it, except in cases of strong necessity, for the convenience and benefit of commerce. But this necessity, under which transmissions

by mail are allowed, can never be said to exist when the parties reside in the same town or place; and, therefore, when that is the case, the courts will not dispense with personal notice. But it is urged that this principle does not apply where the indorser resides beyond the limits of the town. * * It is often very difficult to determine the precise limits of towns, when they have not been incorporated; and, in that case, different opinions may exist as to where they cease and the country begins. In cases of cities or incorporated towns a surer criterion is fixed by the boundary line; and yet, a moment's reflection must satisfy all that the rule would not be the less exposed to embarrassment, if not to ridicule; for it may so happen, and in large commercial towns such will, no doubt, often be the case, that a party living within the admitted environs of the place, may yet be beyond the actual boundary line of the corporation, and so lose a privilege to which he would be, otherwise, clearly entitled; and one who resides two miles from the holder may claim personal notice, whilst another, living perhaps within fifty yards of him, must take the chances of the post-office. Such a discrimination appears to us to be without reason or foundation. The obvious meaning of the courts, when they require personal notice if the indorser lives in the same town or place, is the same immediate neighborhood, whether it be in town or the country."

Against all this weight of precedent and authority, both Federal and State, the case of the *Bank of Columbia* v. *Lawrence,* 1 Peters, S. C. 584, is cited and relied on. But that case, so far as it conflicts with the rule or principle settled by the cases cited, has been overruled, more especially by the later decisions of the same court, in the later case of *Bowling* v. *Harrison,* 6 Howard, U. S. 256. The case was one of peculiar circumstances. Lawrence had lived in Washington city and carried on his trade there; and, while so doing, he had endorsed a note made payable at a bank in Georgetown. Before the note matured and was protested for non-payment, he had sold out his business in

Washington city and removed to a farm in Alexandria county, Virginia, across the Potomac river, three miles from Georgetown, where he resided, resorting to Georgetown as his nearest post-office for his mail. The notice of protest was sent to him by mail, addressed to him at Georgetown; and the court decided, that, under these circumstances, the notice sent to his known and nearest post-office, Georgetown, was a sufficient service of notice. There was no question whatever as to his residence being within, or without, the limits of Georgetown; and it was not pretended that he did not duly receive the notice.

The judgment of the circuit court complained of, is erroneous, and must be reversed and annulled; and this court, proceeding to render such judgment as the said circuit court ought to have rendered upon the special verdict, will order judgment for the defendant—the plaintiff in error here—with costs.

JUDGMENT REVERSED.