National Bank *v.* Burton & Sowles.

◆◆

# U. S. NATIONAL BANK *v.* OSCAR A. BURTON & EDWARD A. SOWLES.

*Evidence.    Draft.    Notice:    Pleading.*   R. L. ss. 1391, 2006.

1.  DRAFT—PROTEST—NOTARY—AGENT.  In an action on a draft, if there was any evidence tending to show that the notary in protesting it, acted as the agent of the bank holding the draft, the judgment will be sustained; and the facts, that the bank employed the notary to protest the draft, and on the same day he forwarded a notice of dishonor, warrant the inference which the judgment implies the court below made.
2.  NOTICE — ADDRESS.  The draft was signed "Burton & Sowles," who were co-partners.  The envelope containing the notice was addressed "O. A. Burton, Edward A. Sowles," one name written above the other.  It did not appear that there was any delay, or that any one was misled; *Held,* that while the letter should have been "accurately directed and addressed," error could not be predicated on the judgment on account of the alteration.
3.  PRACTICE.  Objection cannot be made that the defendants were sued individually, and not as partners, when the question was not raised below.
4.  LACHES—NOTICE—MAIL.  Where the first indorser and the drawer reside in the same town, and the draft is protested in another town, the first indorser, receiving notice of dishonor to the drawer in due course through a subsequent indorser, *may forward it by mail to the drawer.*  And there were no *laches* where the notice was deposited in the post office the same day it was received; and proof of deposit in the mail is sufficient to charge the drawer, without proof of its reception in due time.
5.  PLEADING.  The plaintiff can maintain the suit in its own name, although the draft was indorsed to its cashier.
6.  EVIDENCE.  Error cannot be alleged, where the evidence was admissible for some purpose, and it does not appear that it was used for an illegal purpose.

ASSUMPSIT on a draft.  Trial by court, April Term, 1885, WALKER, J., presiding.  Judgment for the plaintiff.

The plaintiff offered in evidence a draft as follows: "St. Albans, January 30th, 1885.  Four months after date pay the First National Bank of St. Albans or order, four thousand forty-six and eighty one-hundreths dollars, value re-

ceived and charge to account of Burton & Sowles." "To Glenn's Falls Shirt Co., St. Albans, Vermont."

The draft was "accepted, payable at the National Bank of Commonwealth, Boston, Mass., Glenn's Falls Shirt Co., by B. C. Hall, treasurer"; and indorsed "Pay to E. G. Sherman, cas. U. S. Nat. Bank, New York," "A. Sowles, cas."; also, "Pay J. A. Eddy, cas., Maverick National Bank, Boston, Massachusetts, for collection."

The plaintiff offered the notarial certificate and presentment, and protest thereto annexed.

The plaintiff also introduced the testimony of Albert Sowles, who testified, that he was cashier of the First National Bank of St. Albans in the year 1884, and that E. A. Sowles was president thereof; that the above draft was given to and passed through the latter bank in renewal of former drafts held and owned by that bank against the same parties, for moneys advanced from time to time to the Glenn's Falls Shirt Co.; that said Sowles, cashier, negotiated the same, to the United States National bank, New York, and sent it by post to E. G. Sherman, who was reputed cashier; that L. C. Murray was acting president of the bank with whom he did business, with Murray as president and said Sherman as cashier; that he had correspondence with the Maverick National bank, of Boston, Massachusetts, and that J. J. Eddy was reputed cashier thereof, and acted as such.

The court admitted the draft, notarial certificate, and testimony above, against the objection and exception of the defendant.

The court found:

That the above draft was drawn on the Glenn's Falls Shirt Co., located and doing business at St. Albans; that said draft is genuine; that Burton & Sowles were a partnership firm, composed of the defendants, Oscar A. Burton and Edward A. Sowles; that at the time of the execution of said draft, and since said Burton has resided

in Burlington, Vermont, and said Sowles at St. Albans, Vermont; that during said time Burton had an office and place of business in St. Albans, and did a large business there and elsewhere in other towns; that the above draft was accepted and payable, as above shown by the indorsee; that thereafter the same was sent, as testified to by Cashier Sowles, for negotiation, and the same was afterwards indorsed over by L. C. Murray, acting president of plaintiff's bank, to J. J. Eddy, acting cashier of the Maverick bank of Boston, Massachusetts, for collection; that on the second of June, 1884, at the request of said cashier of said Maverick National bank, C. H. Smith, a notary public, demanded payment on said draft at the National Bank of Commonwealth, Boston, Massachusetts, and there being no funds, payment was refused and the drawers and indorsers were notified, and protest made, as set forth in the notarial certificate of protest above, and on the same day said notary mailed a notice of protest through said plaintiff's bank and the latter banks to the First National bank of St. Albans, addressed to Burton & Sowles, as shown by said notice; that said latter bank passed into the hands of a receiver, April 22, 1884, and that said notice to Burton & Sowles was received by said receiver through F. J. Houghton, the clerk of said receiver, June 4, 1884, at St. Albans, and on the same day said Houghton enclosed said notice in an envelope and directed it to O. A. Burton, Edward A. Sowles, St. Albans, as shown by said envelope, and dropped it into the post office at St. Albans, June 4, 1884, where it was stamped with the stamp of said post office.

That said defendant Sowles never received said notice of protest or knew about it until since this suit was brought; that said Burton was out of the State of Vermont continuously from May 30 till June 30, 1884, and in the Western States; and after this suit was brought he told said defendant Sowles that he never received any notice of the protest of said draft; but we find that he did receive the notice mailed .

by Houghton at some time, but we are unable to find from the evidence when he received it. He had it in his possession in May or June, 1885, and the plaintiff's attorney produced it from Burton's counsel in May or June, 1885.

*E. A. Sowles, H. A. Burt,* and *Noble & Smith,* for the defendant.

The action cannot be maintained in the name of the plaintiff. The draft was indorsed to its cashier. *Bank* v. *Lyman,* 20 Vt. 667. The defendants should have been sued as partners. Dan. Neg. Inst. ss. 970, 1050; Byles Bills, 444. The notarial certificate was inadmissible as evidence. 1 Greenl. Ev. s. 489; *Bank* v. *Gray,* 2 Hill, 277; Dan. Neg. Inst. s. 966; Byles Bill, *390; *Daken* v. *Graves,* 48 N. H. 45; *Kittland* v. *Wanser,* 2 Duer, 277; R. L. s. 2006.

The defendants did not receive legal notice, and are therefore discharged from liability. R. L. s. 2006; Dan. Neg. Inst. ss. 1003, 1006; *Cabot Bank* v. *Warner,* 10 Allen, 524; *Bank* v. *Wood,* 51 Vt. 471; Byles Bills, 438, 437; *McCrammon* v. *McCrammon,* 17 Mart. (La.) 158; *Patrick* v. *Beasley,* 6 How. (Miss.) 600; *Green* v. *Tarley,* 20 Ala. 322.

Notice must be given the most expeditious way. Dan. Neg. Inst. ss. 1006, 1033; Byles Bills, 430, 423, 412, 413; *Jarvis* v. *Mfg. Co.* 23 Me. 287; *Barishere* v. *Parker,* 6 East, 3.

Unless due diligence is shown the loss falls on the sender of the notice. *Clark* v. *Ward,* 4 Duer, 206.

At common law, notice must be personally served, if parties reside in the same place. Notice by mail is not sufficient, without proof that it actually and seasonably reached him. Our statute does not change the common law rule in this case. R. L. s. 2006; Byles Bills, 424; Dan. Neg. Inst. s. 1005; *Bank* v. *Battle,* 4 Humph. 86; *Bowley* v. *Howard,* 8 How. 248; 2 Greenl. Ev. s. 188; Story Notes, s. 322; *Bowley* v. *Harrison,* 6 How. (U. S.) 248; *Pierce* v. *Pender,* 3 Met. 352; 3 Kent Com. (5th ed.) 107.

"It is not that the indorser resides in the same town,

where the protest is made, which entitles him. to personal notice, but that he resides in the same place with the person who gives the notice." Byles Bills, 424; *Spencer* v. *Ballard*, 18 N. Y. 327; Par. Merc. Law, 115; *Pierce* v. *Pender*, *supra*.

The envelope containing the notice was improperly addressed. 1 Wait Act. & Def. 646; Dan. Neg. Inst. s. 1028; *Beckwith* v. *Smith*, 22 Me. 125; *Dickens* v. *Beal*, 10 Pet. 572; *Bank* v. *Wood*, 51 Vt. 471; Byles Bills, 420, 421; *Walter* v. *Haynes*, 21 E. C. L. 721.

*E. R. Hard* and *Cross & Start*, for the plaintiffs.

The first exception of the defendant, Sowles, is to the admission of the draft, notarial certificate, and the testimony of Albert Sowles.

This exception is not entitled to notice, because the ground or grounds of the objection were not specified. *Burton* v. *Driggs,* 20 Wall; S. C. Book, 22 U. S. Sub. Ct. Rep. 301; *Camden* v. *Doremas*, 3 How. 515; *Hinde* v. *Longworth*, 11 Wheat. 199. The objection having been made generally to *three* different and distinct kinds of testimony could not properly be sustained, if *any* of the testimony objected to was admissible. *Knight* v. *Smythe*, 57 Vt. 529. The draft was not only admissible, but was indispensable to the proof in the plaintiff's case, it being the identical instrument declared on.

The notarial certificate of presentment, dishonor, protest, and notice, was equally competent and necessary. R. L. s. 2006; 2 Dan. Neg. Inst. ss. 959, 1055.

Even asssuming that defendants were entitled to personal notice, still, if notice was sent to them through the post office, and actually and seasonably reached them, or either of them, or went to the residence or place of business of either, it would be sufficient; and as these facts were to be found by the court, the objection to the notice was not well taken. 2 Dan. Neg. Inst. s. 1003.

And so was the testimony of Sowles admissible; as with-

out proof of his official character as cashier of the First National bank, in which capacity he indorsed the paper to the plaintiff, the right of plaintiff, as endorsee, to maintain the suit would not have appeared.

"The cashier of a bank has a general authority to issue and endorse negotiable paper." Mor. Corp. s. 65.

So it was proper, if not necessary, to show that Sherman was cashier of the plaintiff bank, and that Murray was its president, since the indorsement of the draft by the First National bank of St. Albans (the payee) was to "E. G. Sherman, cashier," and the indorsement of it by the plaintiff to the Maverick National bank was by "L. C. Murray, president."

And proof that Sherman and Murray were respectively the acting and reputed cashier and president of the plaintiff bank, was competent, and was sufficient for the purposes of this case. Ang. & Ames, Corp. s. 139.

The envelope, with its superscription "O. A. Burton, Edward A. Sowles, St. Albans, Vt.," with the postage-stamp and post-mark "St. Albans, Vt., June 4," which was proved and found to be the post-mark of the St. Albans post office, was also entirely competent as bearing upon the question whether the defendants actually received seasonable notice.

The post-mark is *prima facie* evidence of mailing. 2 Dan Neg. Inst. s. 1052.

The testimony of Hard was admissible. Wade Notice, s. 751; 2 Dan. Neg. Inst. s. 999.

The fourth exception of Sowles was the rendition of judgment for the plaintiff.

As the judgment was rendered upon all the testimony, and as *other testimony* was introduced besides that which is recited, it is not easy to see how it can be claimed that it affirmatively and clearly appears that there was error in giving judgment for the plaintiff.

But it is quite immaterial whether the court found any facts respecting the notice to the defendants, other than

those which distinctly appear in the case, as in a case like the present one, it is sufficient that the notice was deposited in the post office at the proper time. 2 Dan. Neg. Inst. 1022, 1058; *Manchester Bank* v. *Fellows*, 28 N. H. 302; *Eagle Bank* v. *Hathaway*, 5 Met. 212; *Hartford Bank* v. *Stedman*, 3 Conn. 489; 1 Wait Act. & Def. 648.

The opinion of the court was delivered by

VEAZEY, J. This case was tried by the court without a jury, and judgment was rendered for the plaintiff, to which the defendant Sowles excepted. The latter now alleges several grounds of error in the judgment, and insists upon several exceptions to the rulings in the course of the trial. One ground of defence urgently pressed in argument, is that the case does not show any notice of dishonor to these defendants.

I. In this bill of exceptions is a statement in effect that notice was given by the notary who protested the draft; and the notice is referred to in the bill and is sufficient in all respects if it was given at the instance of the bank which protested the draft. To this extent no question is made by the defendant Sowles; but he says as it is not stated in the bill of exceptions that the notice was given by the notary as the agent of the bank, it amounts to nothing as a notice. It is true the burden is on the plaintiff to prove notice, and that it was in due time, and was by some party to the instrument; but it is also settled that the holder may act, in giving notice, by an agent, and in his name. Byles Bills, c. 22, and cases there cited. If, therefore, there was any evidence tending to show that the notary acted in behalf, and by authority, of the bank, the judgment for the plaintiff must be sustained on this point. We think there was such evidence. The case shows the notary was employed by this bank to protest the draft; that on the same day a notice of dishonor was made and forwarded by him. The notary had no motive to act in his own behalf. The duty

rested on the bank to give notice. These facts and circumstances seem to us sufficient to warrant the inference which the judgment implies the County Court made.

If this had been an inland, not foreign, draft, the certificate of protest which sets forth the fact of notice to the drawers, would under our statute have been evidence of notice. R. L. s. 2006. There is authority to the same effect under the law merchant, as to foreign bills or drafts. 2 Parsons, 498. But as there is strong authority against this view, we prefer to let the case on this point stand on the ground first stated. We think the custom of notaries to give notice of dishonor when they are employed to make the protest, is so general, the giving of the notice might properly be regarded as an incident of the employment without express request or direction, but we cannot properly regard the fact of such custom as it is not brought into the bill of exceptions.

II. Another ground of defence claimed is that the envelope containing the notice was improperly addressed. The draft was dated at St. Albans, Vt., and was signed "Burton & Sowles." The envelope was addressed "O. A. Burton, Edward A. Sowles, St. Albans, Vt.," the name of O. A. Burton being written above the name Edward A. Sowles. Burton & Sowles were co-partners, and were the persons named, O. A. Burton and Edward A. Sowles. The general rule is that when the notice is to be sent by post, care must be observed that the letter be accurately addressed and directed; for any mistake occasioning delay, and which might have been avoided by due care, will deprive the holder of all remedy against the party to whom the notice ought to have been given. Story Prom. Notes, s. 345. We think it cannot be said as matter of law that the address as made, instead of " Burton & Sowles," was fatal. It does not appear that any one was misled, or that there was any delay by reason of the address including the christian names or the initial letters of the christian names of these

men. They and they only constituted the firm of Burton & Sowles. The place where they lived or did business is not a large city, but a village, and the transaction indicates they were men of business prominence. It is stated in the exceptions, that Sowles was the president of a bank in St. Albans.

The letter or envelope must be " accurately directed and addressed." This is the tenor if not the precise language of all the books, the same particularity being required in the direction as in the address. Yet it is not every change or mistake in the direction of a notice that vitiates it. " If the error is merely nominal and is not calculated to mislead, or does not mislead the party, the mistake will not be fatal." Story, s. 347.

The word " accurately " as applied to direction and address of notice of dishonor, has not been so defined that a court can in each case say as matter of law just what alteration constitutes an inaccuracy. A change may be so violent as to exclude the idea of accuracy, or so slight as to exclude the idea of inaccuracy. In such cases the court should so hold. Alterations intermediate these extremes would seem to involve a mixed question of law and fact. In the case at bar it cannot be said that the alteration in the address was so great as to exclude the idea of accuracy. Error, therefore, cannot be predicated on the judgment on account of the alteration in the address.

III. Another objection to this judgment is that the suit was brought against the defendants individually, whereas the proof is that they were partners. Sec. 1391 R. L. is an answer to this objection, wherein it is provided that no question of variance between the pleadings and the evidence shall be heard except such as the exceptions show were raised and passed upon in the County Court, unless such variance is material and substantial, affecting the right of the matter. The variance complained of is not of that character, and no question was raised below.

IV. The first indorser of this draft, viz.: the St. Albans bank, received the notice of dishonor to the drawers in due course through the subsequent indorser, the plaintiff, which was forwarded to the drawers, the defendants, by the St. Albans-bank, by depositing the same on the day it was thus received, in the post office at St. Albans, addressed to the defendants. Question is made that this resort to the mail by the St. Albans bank, instead of personal notice, or written notice at the dwelling-house or place of business, constituted *laches*.

It is now settled law as a general proposition, that the method of sending notice through the successive indorsers, as was adopted in this case, has the same effect as though the notice of dishonor was sent directly to each indorser. *Eagle Bank* v. *Hathaway*, 5 Met. 212; *Butler* v. *Duval*, 4 Yerger, 265; *Farmer* v. *Rand*, 16 Me. 453; Byles Bills,* 226. The contention here is that as the St. Albans bank was located in the same place where the drawers resided or did business, the proof of the deposit of the notice in the mail is not sufficient to charge the defendant without proof of the reception by them in due time.

The general rule is, that when the parties reside in the same city or town, the notice, verbal or written, must be personal, or written notice must be left at the dwelling-house or place of business; and notice by mail will be insufficient unless its reception in due time is proved. But if the instrument is protested at a place different from the residence of the party who is sought to be notified, the mail may be used. Daniels, s. 1005, and cases there cited. And it has been held that it may be used by an indorser, who has received notice by mail, in sending notice to a previous party residing in the same town, provided the notice is redeposited on the same day it was received, so that it may reach the previous party on the same day it would have been received by him if originally addressed to him and had not been withdrawn from the post office and remailed.

*Eagle Bank* v. *Hathaway*, 5 Met. 213; *Manchester Bank* v. *Fellows*, 28 N. H. 302; *Hartford Bank* v. *Stedman and Gordon*, 3 Conn. 489; *Shelburne Falls Nat. Bank* v. *Townsley*, 102 Mass. 177. We think this rule is at least strict enough, and it fully covers the point as it comes up in this case. It being held that all the requirements of the law as to giving notice of dishonor to the drawers were complied with, their liability is established although they may not have received the notice in due time to charge them if these requirements had not been complied with.

V. The defendant further says the plaintiff cannot recover because this draft was indorsed to "E. G. Sherman, Cas.," instead of to the plaintiff bank, of which Sherman was cashier.

It is the settled law of this State, contrary to the general commercial law, that an action upon a promissory note may be maintained in the name of the party beneficially interested, where the note is in terms made payable to his agent as treasurer, cashier, etc. *R. & B. R. R. Co.* v. *Cole*, 24 Vt. 33.

VI. Objection and exception was taken to the admission of certain evidence. We think it requires no discussion to show that all such evidence was admissible for some purpose, and it does not appear that it was used for illegal purpose in any instance.

Judgment affirmed.