## JANE FARRANT *v.* F. C. BATES.

*Practice. Exceptions. Judgment. Riparians Rights. Navigable Lake.*

An exception to the rendition of a judgment upon a special verdict does not reach back to a question, whether raised or not on trial, to which no exception was reserved, and which it is not necessary to determine in order to render a valid judgment. Thus, in such case it was held that whether the court erred in omitting to submit to the jury questions and instructions which ought to have been submitted was not open to review. *Goodenough* v. *Huff*, 53 Vt. 482, distinguished.

TRESPASS *quare clausum fregit*. Trial by jury, February Term, 1886, Orleans County, Ross, J., presiding. Judgment on a special verdict for the plaintiff. Affirmed.

The Newport & Richford Railroad runs across the premises in question, and along and near Lake Memphremagog. The defendant, at the time of the alleged trespasses, was the owner of a veneer mill situated near said close; and it was in bringing the logs intended for use in the mill over the railroad, and rolling them from the cars on to the dump, and thence into the lake, that said trespasses were committed. It was conceded that the plaintiff owned the premises described in the declaration, of which she claimed that the strip in controversy formed a part. The plaintiff's evidence tended to show that said railroad was built in 1872; that the next year the husband of the plaintiff built a fence, both sides of the railroad, along the foot of the dump, from two to six feet from the dump and between it and the lake; that the fence was maintained till 1880, but finally disappeared, or the most part, except posts in the ground; that plaintiff afterwards caused the fence to be rebuilt, and claimed, among other things, to recover for its destruction; that, previous to and at the time of building the

railroad, there was a strip of land between the line where the fence stood and low-water mark ; that this strip varied in width from one to four rods, and was of considerable value for the purposes of cranberry culture and a mill site, and was covered with bushes from six to ten feet high ; that the defendant rolled some of the logs across said strip of land when not covered with water, broke down the fence and bushes, and that he boomed his logs against and upon said strip, attaching the end of his boom to the railroad dump. The defendant's evidence tended to show that when the railroad was constructed (forty-one and one-fourth feet from the central line of survey) there was no land between the line where the fence stood and low-water mark ; that after the building of the railroad there was only a narrow strip (in some seasons none at all) exposed for a few days between the foot of the dump and low-water mark, and that this had been entirely formed by the spreading out of the dump in the soft bottom, and the action of the waves in washing down the sand from the dump ; that this strip could be of no use for an agricultural purpose, or any purpose, except to pass over in going from the railroad dump to the lake ; that said lake was navigable ; that its waters varied in height from four to six feet between high and low-water mark, and during the greater part of the year the waters of the lake washed the foot of the dump ; and that said trespasses were committed by rolling logs from the cars on to the dump, and from the dump on to the ice or into the water, which came nearer the dump than the fence, and so floating them out into the water without actually touching the land claimed by the plaintiff ;. that he committed said supposed trespasses by the consent and direction of the managers of said railroad.

On October 28, 1884, the plaintiff executed to the railroad a deed of right of way, which was to be " the same width as it is now fenced." The railroad had paid no land damages till . this deed was given. The plaintiff's evidence tended to show that she rebuilt the fence soon after this deed was given, and

Farrant v. Bates.

that the trespasses were committed at various times between July 1, 1883, and December 27, 1884. The main contention was whether there was a strip of land where said logs were rolled off, between the original fence, or its remains, and low-water mark of the lake, at the time the railroad was built and subsequently. The question whether the lot extended into the lake was not presented to the jury. The court submitted the questions in the special verdict to the counsel of both parties, and they made no objections thereto, and did not suggest any other subject of inquiry to be submitted. The following is a copy of the verdict:

Q. Where was the low-water mark of the lake, between the point to which the defendant's boom is attached and where the line of the plaintiff crosses the knoll, when the railroad dump along there was constructed? Nearer, at, or farther from the lake than where the plaintiff's fence, or remains of such fence, were October 28, 1884, when the plaintiff and others deeded to the railroad company?

A. Nearer the lake.

Q. Where was the low-water mark of the lake, at the same place as stated in question 1, from July 1, 1883, to Dec. 27, 1884? Nearer, at, or farther from the lake than the fence, or remains of fence, were October 28, 1884?

A. Nearer the lake.

Q. If question 2 is answered "nearer the lake," was the low-water mark of the lake at that place made by building the dump of the railroad along there?

A. In part.

Q. Where was the low-water mark of the lake at the place stated in question 1, when the railroad company entered upon the land now owned by the plaintiff to construct its road? Nearer or farther than forty-one and one-fourth feet from the centre line of the railroad as constructed?

A. Nearer.

Farrant v. Bates.

Q. When the railroad dump was constructed, did the high-water mark of the lake come to the fence located as claimed by the plaintiff on the lake side? And, if so, how much of the time each year did it reach the line of said fence?

A. It did for nine months in the year.

Q. Has the defendant committed any trespasses upon the plaintiff's premises, other than on the strip of land in controversy, between July 1, 1883, and December 27, 1884?

A. No.

Q. What damages, if any, has the plaintiff sustained by the trespasses of the defendant on the strip of land in controversy, between July 1, 1883, and December 27, 1884?

A. Five dollars.

Q. What damages, if any, has the plaintiff sustained by the trespasses of the defendant on her premises, at places other than on the strip in controversy, between July 1, 1883, and December 27, 1884?

A. Not any.

*T. Grout, J. C. Burke* and *C. A. Prouty*, for the defendant.

The first question is whether the owner of land bordering on a navigable lake has the same title to the strip between high and low-water mark that he has to the land above high-water mark, or whether his title is of a qualified character. There is no evidence that the plaintiff's lot extended into the lake, or, at least, that question was not submitted to the jury. In navigable waters the State holds title to land between high and low-water mark. *Gould* v. *Hudson R. R. R. Co.* 6 N. Y. 552; *State* v. *Jersey City*, 25 N. J. L. 525.

In England only those waters were termed navigable in which the tide ebbed and flowed; but in the United States all those waters are called navigable which are navigable in fact. *Genesee Chief* v. *Fitzhugh*, 53 U. S. 12 How. 443 (13 L. ed. 1058); *Barney*, v. *Keokuk* 94 U. S. 324 (24 L. ed. 224); *Martin* v. *Waddell*, 39 U. S. 16 Pet. 367 (10 L. ed. 996);

*Pollard* v. *Hagan*, 44 U. S. 3 How. 213 (11 L. ed. 565);
*Goodtitle* v. *Kibbe*, 50 U. S. 9 How. 471 (13 L. ed. 220).

These cases related to tidewater, but the principles enunciated in them apply to all navigable waters. The tendency of recent decisions seems to be that a riparian owner of land bordering on a navigable lake holds to the ordinary waterline.

*Seaman* v. *Smith*, 24 Ill. 521; *Delaplaine* v. *Chicago &
N. W. R. Co.* 42 Wis. 214; *Diedrich* v. *Northwestern R. R.
Co.* Id. 248.

The defendant had a right to occupy this shore as he did, it being a part of the lake itself for nine months in the year.

*Harvard College* v. *Stearns*, 15 Gray, 1.

The owner of soil which, in its natural state, is covered with navigable water during the greater part of the time, holds his title subject to the public right of navigation. *Martin* v.
*Waddell*, *supra*; *Blundell* v. *Caterall*, 5 Barn. & Ald. 268;
*Olson* v. *Merrill*, 42 Wis. 203.

One is not liable in trespass who enters upon a strip like this when it is not covered by water, and digs up the soil for the purpose of taking shell fish. *Peck* v. *Lockwood*, 5 Day, 22.

One who leases the right to anchor a raft opposite his land on a navigable stream cannot recover the contract price, because he had no right to lease. *Moore* v. *Jackson*, 2 Abb. N. C. 211.

The court in this state has apparently denied the right to wharf out into deep water (*Austin* v. *Rutland R. R. Co.* 45 Vt. 215); but, if the rule should be held otherwise, then the defendant is entitled to a new trial; because, if the court omitted to submit any question, or give any instructions, which ought to have been submitted or given, it is cause for a new trial (*Goodenough* v. *Huff*, 53 Vt. 482).

The defendant's evidence tended to show that he rolled his logs directly from the dump into the water, and this question ought to have been submitted to the jury.

*Edwards, Dickerman & Young*, for the plaintiff.

The plaintiff had such an interest in the land between high and low water mark that she could maintain trespass for an injury upon it. *Clement* v. *Burns*, 43 N. H. 609.

She could have erected a wharf on this strip of land. *Rex* v. *Russell*, 13 E. C. L. 271.

"The public have no common-law right of bathing in the sea," and cannot cross the seashore on foot for that purpose.

HOLROYD, J., in *Blundell* v. *Caterall*, 7 E. C. L. 91; *S. C.* 5 Barn. & Ald. 268.

In the same case BAILEY, J. said: "But, if A hath the *ripa* or bank of the port, the king may not grant a liberty to unlade upon that bank or *ripa*, without his consent, unless custom had made the liberty free to all, as in many places it is; for that would be a prejudice to the private interest of A." Lord HALE was quoted as saying the same; and ABBOTT, Ch. J., said: "Now such consent as applied to the natural state of the *ripa* or bank would be wholly unnecessary, if every man had a right to land his goods on every part of the shore at his pleasure." "The owner of the soil of the shore may also erect such buildings or other things as are necessary for carrying on of commerce." *Blundell* v. *Caterall*, *supra*, Ang. Tidew.

GEEN, J., says, in *Gough* v. *Bell*, 22 N. J. L. 441, "That most of the Atlantic States had adopted the principle that extends the riparian owner to low-water mark;" and this was affirmed by the court of appeals. 23 N. J. L. 624.

The riparian owner has the sole right of quarrying stone between high and low-water mark; (*Hart* v. *Hill*, 1 Whart. (Pa.) 137); to use a spring (*Lehigh Valley R. R. Co.* v. *Prone*, 28 Pa. 206); to get seaweed cast upon the shore (*Emans* v. *Trumbull*, 2 Johns. 322); and he may maintain trespass for an entry upon the shore to carry off a wreck (*Barker* v. *Bates*, 13 Pick. 255).

Such owner's rights extend so far as they do not interfere with the public interest in navigation. *Frink* v. *Lawrence*, 20 Conn. 117.

It is a settled rule, "assumed and acted on," says SHAW, Ch. J., in *Barker* v. *Bates, supra,* that the soil in the sea shores and flats of our maritime frontier is the property of the riparian owner, subject to certain modifications. *Storer* v. *Freeman,* 6 Mass. 435 ; *Parker* v. *Smith,* 17 Mass. 413 ; *Lapish* v. *Bangor Bank,* 8 Greenl. 85.

If any land was made outside the fence by the railroad, by placing the dump there, it belonged to the plaintiff. *Nichols* v. *Lewis,* 15 Conn. 143.

The owner of land bounded on Lake Champlain has a right to low-water mark. *Austin* v. *Rutland R. R. Co.* 45 Vt. 244 ; *Jackeway* v. *Barrett,* 38 Vt. 316.

" A grant bounded by a great pond or lake, which is public property, extends to low-water mark." GRAY, Ch. J., *Paine* v. *Woods,* 108 Mass. 160. See *East Haven* v. *Hemingway,* 7 Conn. 203 ; Gould, Waters, 156 ; *Champlain & St. L. R. R. Co.* v. *Valentine,* 19 Barb. 491 ; *Waterman* v. *Johnson,* 13 Pick. 265 ; *Wood* v. *Kelley,* 30 Me. 55 ; 5 Wend. 423 ; 7 Allen, 158 ; *Fletcher* v. *Phelps,* 28 Vt. 257 ; *Fay* v. *Salem & D. A. Co.* 111 Mass. 27 ; *State* v. *Gilmanton,* 9 N. H. 461 ; 77 U. S. 10 Wall. 497 (19 L. ed. 984) ; 66 U. S. 1 Black, 23 (17 L. ed. 29) ; 4 Wis. 486.

The opinion of the court was delivered by

TAFT, J. The only exception taken upon the trial below was to the rendition of judgment upon the special verdict. There was no general verdict. No exception having been taken to the action of the court in ruling upon any question which arose prior to or at the time the special verdict was returned, there is no question in this court for revision, save the one

taken to the rendition of the judgment; and there was no error therein, if the facts established by the special findings are sufficient to support the judgment rendered. The special verdict, as we construe the answers, established the facts, that the plaintiff owned, and was in possession of, a strip of land uncovered by water, between the old fence and low-water mark, over which the defendant rolled his logs, and in so doing became a trespasser. Such facts were sufficient to support the judgment. The many questions discussed by counsel at the hearing, are not properly before us, no exception having been taken to the action of the court in passing upon them. It is claimed by counsel that if the court below " omitted to submit any question which ought to have been submitted, or to give any instructions which ought to have been given," a new trial should be granted, and cite the case of *Goodenough* v. *Huff*, 53 Vt. 482. To entitle the party to the benefit of such questions they should have been reserved in the court below; and an exception to the rendition of the judgment upon the verdict does not reach back to questions arising during the trial. The judgment should stand, if facts sufficient to base a judgment upon, were established by the answers to the questions which were submitted; and *Goodenough* v. *Huff*, *supra*, is not in conflict with this view of the question. In that case the plaintiff sought to recover the amount of a promissory note; one question was whether there was a consideration for the giving of it; the issue was made by the pleadings and the evidence. The court did not. submit that question to the jury, only submitting the ones when the note was signed, as that became material under the plea of the Statute of Limitations and the amount due upon it. The special verdict established the facts that the defendant signed the note within six years prior to the bringing of the action and the amount due upon it.

It was incumbent upon the plaintiff under his claim as to when the defendant signed the note, to show a consideration for the signing. The judgment was rendered, not on the

special findings alone, but also on the undisputed facts as to the circumstances under which the defendant signed the note, as shown by the plaintiff's testimony. The exception of the plaintiff reached every ground of the judgment, one of which was that there was no testimony tending to show a consideration, and as the Supreme Court held there was such testimony, the rendition of the judgment was error. The case, therefore, only amounts to this, that every question involved in the rendition of a judgment is reached by an exception to its rendition, and we think the converse of the proposition is true that the exception does not reach a question, although raised upon trial, that it was not necessary to determine in order to render a valid judgment.

The counsel have thoroughly argued a question involving the rights of riparian owners, but as a majority of the court think the question is not presented by the record, we refrain from any discussion of it. The duty of the court is to pass only upon questions presented by the record.

Judgment affirmed.