WILLIAM H. VALIQUETTE v. CLARK BROTHERS COAL MINING
COMPANY.

February Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 6, 1910.

*Bills and Notes—Fictitious Payee—Right of Real Payee to Sue
in His Own Name—Exception to Judgment—What Ques-
tions Reserved—Principal and Agent—Agent's Authority—
Estoppel of Principal to Deny—Holding out Agent—Pay-
ment by Principal of Drafts Made by Agent Without
Authority—Effect—Implied Authority.*

Plaintiff can maintain an action in his own name on a draft the whole
consideration for which moved from him, and which is payable to
the "Berwick House," which is only the name of a hotel of which
plaintiff is the sole proprietor.

A question, the decision of which is not necessary to the validity of a
judgment, is not reserved by an exception to the rendition of the
judgment.

In general assumpsit based on a draft, it cannot be objected in Supreme
Court that plaintiff should have declared specially, where that
question was not raised on trial, and the only exception was to the
judgment, which was rendered on an agreed statement.

In an action of general assumpsit, the objection that plaintiff should
have declared specially is one that can be waived, and is waived
where it is not made on trial, as it does not go to the jurisdiction,
but only to a matter of pleading and procedure.

The principle that whoever deals with an agent having only a limited
authority is bound at his peril to know the extent thereof has no
application where the principal is estopped by his acts and culpable
silence to deny the authority in question.

Where within four weeks defendant, without objection to plaintiff, paid
three drafts for $47.56, $75, and $150, respectively, which, without
authority, were drawn on defendant in favor of plaintiff by de-
fendant's agent, known to plaintiff as such, but of whose lack of

authority plaintiff was ignorant, in payment of the agent's board and of money advanced him by plaintiff, defendant is estopped to deny its agent's authority within three weeks thereafter to make a fourth draft of $250 on defendant in favor of plaintiff for a like consideration, although the agent was then indebted to defendant.

If defendant, after having accepted and paid the third draft, did not want to be bound by a fourth, it should have notified plaintiff to that effect, and its failure to do so was virtually holding the agent out to plaintiff and accrediting him as having authority to make the fourth draft.

Defendant's conduct and silence amounted to an admission of the agent's authority to draw, and that was an admission of an obligation to accept.

A general authority to do an act is an implied authority derived from a course of dealing, or from a number of acts of a particular kind authorized or assented to; and such an authority enables an agent to bind his principal, without orders, in dealing with those who have no notice of the lack of power expressly delegated to the agent, and who act without collusion.

GENERAL ASSUMPSIT, based on a draft for $250.  Plea, the general issue.  Trial by court on an agreed statement of facts at the March Term, 1909, Rutland County, *Waterman,* J., presiding. Judgment for the plaintiff for the amount of the draft, interest, and costs.  The defendant excepted.

From the agreed statement it appears that during all the time material to this case plaintiff was the proprietor, and A. J. Boynton, manager, of the Berwick Hotel in the city of Rutland, Vermont, and that defendant was a corporation organized and existing under the laws of the State of Pennsylvania, having its principal place of business at Philadelphia, and engaged in the business of mining and selling coal; that in February, 1908, defendant employed one J. F. Scott to sell coal for it, he to have a graduated commission of so much per ton, varying with the price obtained by him for the coal; that on April 15, 1908, Scott came to the Berwick Hotel, engaged board therein, and continued to board there till June 16 following, except during short absences from time to time; that he told Boynton that he came to Rutland in behalf of defendant corporation, in which he said he had an interest.  Scott frequently received mail enclosed in

envelopes having defendant's name printed thereon, and addressed to Scott at the Berwick Hotel.

On April 30, 1908, Scott was owing plaintiff $47.50 for board, and handed Boynton a draft of that date for $75.00 drawn by Scott on defendant in favor of the Berwick Hotel, and requested Boynton to apply the draft in payment of the board bill, and in a few days to give him the balance in money. Boynton took the draft, deposited it in a bank for collection, and it was paid by defendant in due course, and the balance $35.94 was handed Scott as requested.

On May 14, 1908, Scott was owing plaintiff for board and for cash advanced, and handed Boynton a like draft for $75, and requested him to apply $20 of the proceeds to the payment of the cash advanced, and to give him the balance in cash, which was done. This draft was deposited for collection as was the first and paid by defendant in due course.

On May 25, 1908, Scott, who was then owing plaintiff a considerable amount for board and for cash advanced, handed Boynton a draft of that date for $150 drawn by Scott on defendant in favor of the Berwick Hotel, and requested credit therefor on his bill, and a further advance of $110, in cash. This request was granted, and the draft paid as were the other two.

On June 15, 1908, Scott, who then owed plaintiff for board and cash advanced, handed Boynton a draft for $250 drawn on defendant in favor of the Berwick Hotel, and requested him to cash same, pay the board bill, and give Scott the balance, $125, in cash, which Boynton did. This draft was deposited like the others, was protested on June 22, 1908, for nonpayment, and is the draft in suit.

Till said draft was protested, neither plaintiff nor Boynton had any intimation that Scott did not have full authority to make drafts on defendant for his board and expenses; but he was never so authorized, unless the acceptance of said three drafts was in law an implied authorization. Scott had no interest in defendant's business, except as above stated, and when he made the draft in question he was indebted to defendant. Plaintiff never caused defendant to be notified of the representations made by Scott to plaintiff and Boynton.

On April 29, and on May 2, 1908, defendant by letter remonstrated with Scott for making drafts on it, and notified him

that it had not authorized payment and could not accept drafts. And on June 12, 1908, defendant by letter notified Scott that "we are simply amazed that you will continue to draw drafts contrary to our wishes and instructions. In order to protect your credit we are paying this draft, but in no circumstances will any more drafts, checks, or orders for money of any kind, form, or description be paid. We cannot do business this way."

*E. H. O'Brien* for the defendant.

As Scott was an agent of limited authority, plaintiff must at his peril discover the limits of that authority. *Bank of Deer Lodge* v. *Hope Mining Co.,* 3 Mont. 146, 35 Am. Rep. 458; *Mechanics Bank* v. *N. Y. & N. H. R. R. Co.,* 13 N. Y. 638; *Blum* v. *Robertson,* 24 Cal. 140. No one can in any case hold a principal liable upon negotiable paper signed or indorsed by his agent without proving such agent's authority. 31 Cyc. 1383; *Flax etc. Mfg. Co.* v. *Balentine,* 16 N. J. L. 454.

An agent's power to make or indorse commercial paper is to be strictly construed, and an occasional recognition by the principal of such acts on the part of the agent is not sufficient to imply general authority to make or indorse such paper. 31 Cyc. 1383; *Paige* v. *Stone,* 10 Met. 160; *Jackson* v. *Bank,* 36 Am. St. Rep. 81; *Com. Bank* v. *Bernedo,* 17 Mo. App. 313; 31 Cyc. 1382; *Denison* v. *Tyson,* 17 Vt. 549; *Taber* v. *Cannon,* 8 Met. 456; *Emerson* v. *Prov. Hat. Co.,* 7 Am. Dec. 66; 31 Cyc. 1381; *Sinclair* v. *Goodell,* 93 Ill. App. 592.

Here was no acceptance by the drawee of the draft in question, hence no liability. 1 Edwards on Bill and Notes, §4; Bouvier's Law Dict., Tit. Bills of Exchange.

*M. C. Webber* for the plaintiff.

The objection that plaintiff should have declared specially, not having been made on trial, is not available here. 8 Enc. Pl. & Pr. 194, (2).

Generally an objection to the sufficiency of a declaration cannot be raised for the first time on exceptions. 8 Enc. Pl. & Pr. 194, (3), 192-6; *Keyes* v. *Waters,* 18 Vt. 479.

"Objection to pleadings which are proper matters for demurrer, or motion in arrest of judgment, cannot be taken in the Supreme Court, if not raised in the court below." Jones. v. *Wolcott,* 81 Mass. 541; *Wall* v. *Provid. Inst. Sav.,* 85 Mass. 96; *Tibbits* v. *Pickering,* 59 Mass. 83; *Bickford* v. *Gibbs,* 62 Mass. 154.

ROWELL, C. J.    It is objected that the action can not be maintained in the name of the plaintiff because his name does not appear on the face of the draft in suit, which is drawn in favor of the "Berwick Hotel," of which the plaintiff was sole proprietor at the time in question; and *Bank of United States* v. *Lyman,* in the Federal Circuit Court for the District of Vermont, 20 Vt. 666, is relied upon in support of the objection; and it does support it, for it holds precisely that.    But such is not the law of this State, and has not been since the case of *Arlington* v. *Hinds,* 1 D. Chip. 431, decided in 1824, in which the contrary was held, and which has been followed by this Court ever since.    Thus, in *Rutland & Burlington R. R. Co.* v. *Cole,* 24 Vt. 33, the note sued upon was payable "to the order of Samuel Henshaw, Treasurer." Henshaw was the plaintiff's treasurer, and the note was given for assessments on shares of the plaintiff's capital stock owned by the defendant, and was declared upon as payable to the plaintiff.    The same objection was made there as is made here, but it was held that as the consideration moved from the plaintiff, and the note was in effect given to it, the action was maintainable in its name.    There are many other cases in this State to the same effect, and among them is *United States National Bank* v. *Burton & Sowles,* 58 Vt. 426.    That was assumpsit on a draft, and it was objected that the plaintiff could not maintain the action because the draft was indorsed to its cashier instead of to itself.    But it was held to be the settled law of this State, contrary to the general commercial law, that an action upon a promissory note or a draft can be maintained in the name of the party beneficially interested, when the instrument is in terms made payable or indorsed to his agent as treasurer, cashier, and the like. We hold, therefore, that this action is maintainable in the name of the plaintiff, who is the party beneficially interested, and indeed the only party that can sue, for "Berwick Hotel" is not a legal entity, but only a name by which the plaintiff's hostelry is designated.

It is further objected that general assumpsit will not lie, but that the plaintiff should have declared specially. This question was not raised on trial, and therefore can not be raised here, unless it is involved in the judgment, which was rendered on agreed facts, and to the rendition of which the only exception in the case was taken. But the question is not involved in the judgment, for its decision was not necessary to the validity of the judgment, and therefore the exception to the judgment does not raise the question. *Farrant* v. *Bates*, 60 Vt. 37; *In re Hall's Estate*, 70 Vt. 458; *Baker* v. *Sherman*, 73 Vt. 26. The objection is one that could be waived, and was waived by not being made on trial, for it did not go to the jurisdiction, but only to a matter of pleading and procedure. Even objections to the form of action are waived if not made on trial. *Bliss* v. *Allard*, 49 Vt. 350. And see *Hammond* v. *Wilder*, 25 Vt. 342; *Chaffee* v. *Hooper*, 54 Vt. 513. *Bickford* v. *Gibbs*, 8 Cush. 154, was assumpsit against guarantors of a note who were sued, as makers. It was objected above for the first time that the guaranty should have been specially declared upon. But it was held that the objection came too late, and the plaintiff had judgment.

As to the merits of the case. It is agreed that Scott had no authority to draw the draft in suit on the defendant, unless its acceptance of the three prior drafts was, in law, an implied authority, and we think it was, for it appears that those drafts were drawn without authority, and their payment was virtually holding Scott out to the plaintiff and accrediting him as having authority to draw the draft in suit. It was an approval of a series of like prior acts that well might have induced the plaintiff to believe that such authority existed, and to take the draft on the faith of it; and that he was thus induced, and did thus take the draft, is not questioned in argument except as hereinafter stated.

If the defendant, after having accepted and paid the third draft, did not want to be bound by a fourth, it should have notified the plaintiff to that effect; and as it did not, it is to be taken as assenting thereto. This is the doctrine of *Keyes & Co.* v. *Union Pacific Tea Co.* 81 Vt. 420, and it is applicable here.

But the defendant says that it was the duty of the plaintiff to ascertain the extent of Scott's authority, and not having done it, he took the draft at his peril. But that principle does not

apply here, for the defendant is estopped by its acts and culpable silence to deny the authority. *Locklin* v. *Davis,* 71 Vt. 321. There the plaintiff was taken to have intended the natural consequence of her silence, on the ground that if one by words, conduct, or culpable silence, though not intending to defraud, leads another who acts prudently, to believe that a certain state of things exists, and who acts upon that belief, he is estopped to deny the existence of that state of things if the other party would be prejudiced thereby; for such a denial would be a breach of good faith, and therefore fraudulent.

But the defendant says that in order to an estoppel it must have admitted funds in its hands, or other obligation to accept, upon which the plaintiff relied, not knowing the truth; but as there was no such admission, the plaintiff could have relied on no such, and therefore no estoppel. But the defendant's conduct and silence amounted to an admission of authority in Scott to draw, and that was an admission of an obligation to accept.

The defendant further says that an occasional recognition of paper drawn as here is not enough, and refers to *Bank of Deer Lodge* v. *Hope Mining Co.* 3 Mont. 146, 35 Am. Rep. 458, as showing that one instance is not enough; and the court does so hold, but on the ground that no inference of original authority could be drawn from one ratification, because such ratification did not operate as presumptive evidence of prior authority, but only as a ratification of the unauthorized act. But the court said that if there had been repeated acts like the one in dispute that the defendant had ratified, the plaintiff could have inferred authority to draw the bill. In support of its holding that no inference could be drawn from one instance, the court referred to *Commercial Bank* v. *Warren,* 15 N. Y. 577. But that case does not hold that. There it was contended that the ratification operated merely as presumptive evidence of prior authority. But the court said that its operation was not confined to that, but worked, *per se,* a confirmation of the act.

In further support of its holding, the court referred to *Cook* v. *Baldwin,* 120 Mass. 317, 21 Am. Rep. 517, as showing that part payment of a bill of exchange is not such a recognition by the drawee as will bind him to pay the rest. And that was the holding. But the court said that such payment might have been accompanied by a positive refusal to pay more; that no indorse-

ment of the payment was made by the drawee, and the fact that he made the payment was simply to be taken in connection with other evidence in determining whether he recognized the bill as one accepted by him and which he was bound to pay.

*Paige* v. *Stone,* 10 Met. 160, is also referred to by the defendant as showing that the recognition of two notes is not enough. There, two prior instances of recognition were relied upon. In one, only one of the defendants assented, and the court said that his assent could not bind the other without further evidence. In the other, the note was small, and was settled after suit brought, but whether the defendants had previously assented to it did not appear.

*Jackson* v. *Bank,* 92 Tenn. 154, 36 Am. St. Rep. 81, to which reference is made, is not much in point, for the gist of the holding there is that a commercial traveler, employed to sell and take orders for goods; to collect accounts; and to receive money and checks payable to the order of his principal, is not, by implication, authorized to indorse the checks in the name of his principal.

Mr. *Wigmore* says that when a general authority to do an act is alleged, and the plaintiff relies on the defendant's having held out a third person as his agent, other instances of the plaintiff's having treated the person as agent for such an act have always been receivable to show a general holding out of that person as agent. The principle of the rule is, he says, that the instances must be numerous enough, and have occurred under conditions so similar, as to indicate a system, plan, or habit of doing that particular thing under similar circumstances; and that the only question in administering the rule is, whether the instances produced have any real probative value to show such system, plan, or habit. I Wig. Ev., §377.

Now a general authority to do an act is, as said in 1 Am. Lead. Cas., 4th ed., 568, on the authority of Lord *Ellenborough* in *Whitehead* v. *Tuckett,* 15 East, 400, 408, an implied authority derived from a course of dealing, or from a number of acts of a particular kind authorized or assented to. And such an authority, it is said, enables the agent to bind his principal, without orders, in dealing with those who have no notice of the want of lawful power in the agent, and who act without collusion. This principle is illustrated by many cases there referred to, and among them is *Munn* v. *Commission Co.* 15 Johns. 44. There an

agent of a company was authorized to make advances of money on goods consigned or deposited, but in that case he had accepted a bill for accommodation on a promise to consign rum. But it was proved that the agent had accepted a number of bills in the same manner as the one in question, which were regularly paid by the company; and the court said that though it appeared by the by-laws of the company that the agent had no authority to accept bills on an expected delivery of goods, yet it was proved that he was the general agent of the defendants, and was in the habit of accepting bills that the company afterwards paid under like circumstances, and therefore it held, on the distinction between a general and a special agency, that the company was bound by the acceptance. So a general authority may be inferred from payment, with knowledge, of notes to which the payer's name was forged. *Weed* v. *Carpenter,* 4 Wend. 220.

In *Barber* v. *Gingell,* 3 Esp. 60, the defendant proved the bill to be a forgery. The plaintiff then proved that the defendant had been connected with the drawer in business, and had in fact paid several bills drawn as the one in suit was, and to which the drawer, as was supposed, had written the acceptance in the defendant's name. Lord *Kenyon* ruled that this was an answer to the defence of forgery, for though the defendant might not have accepted the bill, he had adopted the acceptance, and thereby bound himself to pay. In *Courteen* v. *Touse,* 1 Camp. 43, the proof was that one Butler signed the defendant's name to the policy, and had often done that, but the witness had not seen any general power of attorney from the defendant to Butler; nor did he know that the defendant had given Butler authority to sign this particular policy; nor was he aware of any instance in which the defendant had paid a loss on a policy so signed. Lord *Ellenborough* held that the proof of agency must be carried further.

In *Lytle* v. *Bank of Dothan,* 121 Ala. 215, the giving of other notes by the alleged agent, and the defendant's subsequent recognition of their validity, were admitted. So in *Stevenson* v. *Hoy,* 43 Pa. St. 191, it was held that a general agency to transact business for the principal was not admissible in an action against him on a guaranty, for the act of the agent in signing it was not within the scope of his authority, but said that proof that similar guaranties had been made by the agent and ratified or previously authorized by the defendant would have been admissible. In

*Bryan* v. *Jackson,* 4 Conn. 288, a single payment without disapprobation, for what a servant bought on the credit of his master, was held to be equivalent to a direction to trust him in future.    Story, Agency, 6th ed., §56; 2 Greenl. Ev., 16th ed., §65.

Evidence that the defendant's son, a minor, had in three or four instances signed for his father and accepted bills for him, was held sufficient *prima facie* evidence of authority to sign a collateral guaranty.    *Watkins* v. *Vince,* 2 Stark. 368.

In *Gibson* v. *Hunter,* in the House of Lords, 2 H. Bl. 288, Hingston drew a bill on the plaintiffs in error in favor of a fictitious payee or order, and indorsed it in the name of the payee. The defendant in error, a *bona fide* holder for value, in order to show that the plaintiffs in error at the time they accepted the bill, either knew that the name of the payee was fictitious or had given authority to draw the bill, was permitted to show below that many other bills had been drawn in the same way, and accepted by the plaintiffs in error; and the defendant in error had judgment.    The plaintiffs in error objected above that the evidence was not admissible to prove *actual* knowledge on their part; and if not admissible for that purpose, it could not be admissible to prove general authority to draw bills on them payable to fictitious persons, inasmuch as a general authority to do certain acts, when no actual authority is shown, can be inferred only by showing acquiescence of the person supposed to have given such authority in other acts of a similar nature done with his privity or consent, and that no such acquiescence on their part was shown.    But it was held that the evidence was properly received, and the judgment was affirmed.

*Judgment affirmed.*

HASELTON, J., dissents on the ground that the defendant did not, by honoring Scott's three personal drafts at the times and in the circumstances shown, give him general letters of credit; nor recognize him as its agent to disburse its moneys; nor make him, nor hold him out as, its agent to make commercial paper on which it would be liable without acceptance on its part.