J. B. BRENNAN & SON v. DANSBY & DANSBY.

Decided April 20, 1906.

**1.—Traveling Salesman—Authority—Evidence.**

Facts considered, and held to warrant the defendants in assuming, from their course of dealing with plaintiffs through their salesman, that said salesman had full authority to bind plaintiffs by the contract of sale without submitting the same to plaintiffs for their approval.

2.—Contract—Repudiation.

It is incumbent on a principal to repudiate promptly a contract which his agent may undertake to make, but which is beyond the scope of such agent's apparent authority.

Appeal from the County Court of Brazos County. Tried below before Hon. A. G. Board.

*Lamar Bethea* and *J. R. Astin,* for appellants.—The verdict and judgment are contrary to the law and the evidence. Baker & Co. v. Kellett-Chatham M. Co., 84 S. W. Rep., 661; Iron City Nat. Bank v. National Bank, 47 S. W. Rep., 535; Nations v. Thomas, 25 Texas Sup., 224; Ransom v. Alexander, 31 Texas, 447; Flomerflet v. Hume, 31 S. W. Rep., 679.

It was the duty of plaintiff to enquire and ascertain the fact and extent of the salesman's authority. Baker & Co. v. Kellett-Chatham M. Co., 84 S. W. Rep., 661; Whitaker v. Zeihme, 61 S. W. Rep., 499; Green v. Hugo, 81 Texas, 457; Houston & T. C. Ry. Co. v. Hill, 63 Texas, 384; Rail v. City Nat. Bank, 22 S. W. Rep., 865.

*J. S. Ford* and *M. Nagle,* for appellees.—The principal is responsible for the unauthorized acts of his agent where the conduct of the principal justifies a party dealing with the agent in believing that such agent was acting within and not in excess of the authority conferred on him. Strozier v. Gus. Lewey & Co., 3 W. & W. Civ. Cases, secs. 129 and 131; Lillard v. Mitchell, 3 W. & W. Civil Cases, sec. 457; Baker v. Kellett, 84 S. W. Rep., 661; Banks v. Everest, 35 Kan., 687; Potter v. Springfield Milling Co., 75 Miss., 532.

Even in cases where the contract of the agent is subject to the ratification or rejection of his principal, the principal must either accept or reject said contract in toto. He can not ratify a part and reject the balance. Henderson v. San Antonio & Mex. Gulf Ry. Co., 17 Texas, 560; Thorn v. Dill, 56 Texas, 145.

Evidence of similar prior contracts made by agents of plaintiffs with defendants was admissible to show what authority the defendants were authorized in assuming that the agent in question possessed. Banks v. Everest, 12 Pac. Rep., 141.

REESE, ASSOCIATE JUSTICE.—J. B. Brennan & Son sued Dansby & Dansby in the Justice Court upon open account for flour, sold by plaintiffs to defendants, amounting to $154.68. Defendants admitted the debt, but pleaded as an offset and counter claim a demand against plaintiffs growing out of the breach of contract for sale of three cars of flour bought of plaintiffs by defendants, which plaintiffs had failed and refused to deliver; defendants claiming the difference between the market price at the time and place of delivery and the contract price, amounting to forty cents per barrel, also ten cents per barrel commissions which it was alleged plaintiffs had agreed to allow, in the aggregate $187.50.

On trial in the Justice Court defendants had judgment for costs, the court adjudging that the parties were mutually indebted to each other upon the respective demands pleaded in the sum of $154.68.

Upon appeal by plaintiffs to the County Court the case was tried without a jury and a like judgment rendered, from which plaintiffs appeal. No conclusions of fact and law were filed.

The facts are as follows: Appellants are merchant millers at Sherman, Texas, and appellees are grocery merchants at Bryan, Texas. On January 12, 1903, George A. Benedict, appellants' traveling salesman, called upon appellees at their place of business in Bryan and sold them (for appellants) five cars of flour to be shipped one car per month, the first car to be shipped January 20. The contract was in writing, written upon a printed order blank of plaintiffs, which the salesman had with him, and was signed by appellees and Benedict in duplicate. The order contained the stipulation, "Prices guaranteed against decline," which means that if flour went up it was not to affect the contract price, and if prices declined appellees were to get the benefit of the decline.

Upon receipt of the order appellants wrote to appellees on January 14 acknowledging receipt and thanking them for the order. Nothing was said in the letter about Benedict's authority to make a binding sale, or that his authority was limited to taking orders subject to appellants' approval, but the letter contains, with regard to the order, the following:

"We notice that he has written in the order that one car per month is to be shipped. We can not understand why he has done this and believe that he has surely made an error as it is unreasonable to suppose that we can sell goods five months in the future at today's prices notwithstanding the advancing tendencies in the market. We will, however, be willing to allow in your case 45 days in which to order out the goods, and in case that at the end of that time you had not ordered out the last car we would be willing to grant you a few days extension, the same as we did with the last contract with you, but we could not afford to have it understood that you were to have five months time in which to order the goods out."

To this letter appellees did not reply, and in February ordered the first car, which was shipped as ordered. On February 23 appellants wrote as follows:

"We notice that you have only given us shipping instructions for one car to apply on your purchase on January 12, and at this rate you will see that it will require at least five or six months in which to complete the contract. We wish to be as reasonable as possible with you and you can readily see that we can not accept orders for shipment as far as 5 or 6 months in the future. And we will ask that you think this matter over and if you find you can not order out the rest of these cars within a reasonable length of time to advise us what you think best to be done in the matter."

On March 11 appellees ordered the second car, which was shipped as ordered. Appellants then refused to ship the three remaining cars, whereupon appellees charged them up with the difference between the contract price and the market price and remitted the balance due them on account, leaving a balance due as claimed by appellants of $154.68.

Appellees had been buying flour from appellants, through their traveling salesman, just as this bill was bought, for several years, giving the salesman an order for the amount and kind desired, which orders had

always been promptly filled. The course of dealing was such as to lead appellees to believe that such salesmen had full authority to make a binding sale for appellants, and there had been nothing to bring to appellees' notice or knowledge that the salesmen with whom they had dealt were not so authorized, or that their authority was limited to taking orders subject to the approval of appellants. While appellees had never before bought a bill the delivery of which was to run over sixty days, they had, at least, on one occasion bought a bill the delivery of which was to extend that long, but in which they were allowed three and one-half months in which to order shipment; and they had several times bought under a contract stipulating, "prices guaranteed against decline" without objection on the part of appellants. Appellees had never bought of Benedict before, but Benedict's authority was the same as that of other traveling salesmen, so far as the evidence shows. He was a regular traveling salesman of appellants, and remained in their service as such for more than a year after this transaction, and until a few days before his death.

Members of appellants firm testified that Benedict and other traveling salesmen had no authority to make a binding sale, and that their authority was limited to taking orders subject to the approval of appellants. This evidence was not contradicted.

The first assignment of error attacks the judgment as being without evidence to support it, and against the great weight and preponderance of the evidence.

Appellants contend that appellees were bound to take notice of the limitations upon Benedict's authority, and especially that this sale was so unusual in its terms and such a disadvantageous one for appellants, in the circumstances, the price of flour rising all the time, that appellees were bound to know that Benedict was not authorized to make such a sale.

The only thing unusual about the sale was the long time, five months, in which appellees were allowed to order the flour, at the rate of one car per month. The "guarantee against decline" was not material in a rising market, but could only be material in case prices went down.

It is clear that the sale, giving appellees so long a time to order the flour at the contract price, which they had a right to do without the stipulated guarantee against decline, was probably an unusual sale; but considering the course of dealing between appellees and appellants, through traveling salesmen of the latter, it was not so unusual as that it must have created suspicion in the minds of appellees that Benedict was not authorized to make it, or to arouse inquiry in their minds as to this fact. Such a sale was fairly within the scope of such authority as appellees had a right to assume that Benedict possessed. Unquestionably they had a right to assume from their course of dealing with appellants, through their salesmen, that Benedict had full authority to bind appellants by a sale of flour, without submitting the offer of a purchase to appellants for approval, and there was, we think, nothing about this particular sale to lead them to believe or to suspect that it was such a sale as Benedict was not authorized to make.

The letter of January 14 did not amount to a repudiation of the sale,

or a distinct denial of Benedict's authority to make a sale. Complaint is made only of the length of time allowed appellees to move the flour.

It was incumbent upon appellants if they denied Benedict's authority to make sales, except subject to their approval, and did not approve this one, to so inform appellees distinctly. If the contract as written was not binding on them, there was no contract at all, and appellants should not have been content merely to complain of the length of time allowed, thus seeking to hold on to a part of it while protesting against some of its terms, but should have promptly stated to appellees that they would not ship the flour under this contract. Appellees were justified in treating this letter as a complaint on the part of appellants, and not a repudiation of the contract. Nor can their ordering the flour after the receipt of this letter be considered as an acquiescence in the new terms suggested by appellants. Besides, appellees having no notice of the limitations upon Benedict's authority, and appellants having by their previous conduct so acted as to justify appellees in believing that he had full authority to make the sale, it was not in the power of appellants to repudiate the contract after it was so made, if they had promptly and clearly undertaken to do so.

The assignment of error presenting this question must be overruled.

Appellants also object to the ruling of the court in allowing appellees to testify as to other sales made by salesmen of appellants to them, which evidence was introduced to show the course of former dealing between the parties.

These sales, while not in all their particular terms identical with the sale in question, were of the same general character and certainly the evidence was admissible to show the course of dealing between the parties, and that from this appellees had a right to assume that Benedict had authority to bind appellants by a sale and that his authority was not limited, as contended by appellants, to taking orders subject to their approval.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*