KOLP et al. v. S. F. SCATTERGOOD & CO.
(No. 8316.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 12, 1916. Rehearing Denied March 18, 1916.)

1. PRINCIPAL AND AGENT ☞123(7) — RELATION—SUFFICIENCY OF EVIDENCE.

Evidence in a buyer's suit for profits lost by defendant's refusal to deliver a quantity of bran according to its contract, *held* to show that the seller's agent was authorized to bind him by the contract of sale.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 426; Dec. Dig. ☞123(7).]

2. APPEAL AND ERROR ☞1057(1)—ADMISSION OF EVIDENCE—VERDICT.

In such suit, error, if any; in overruling an objection to the answers of the agent on the ground that his written contract of employment was the best evidence, and that the alleged agen-

cy could not be established by his statements after the termination of his employment, was harmless, in view of the evidence establishing his authority to bind the defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4194–4196; Dec. Dig. ☞1057(1).]

3. APPEAL AND ERROR ☞683—SHOWING OF ERROR.

In the absence of any record showing of the facts alleged as a basis of an objection to depositions, the appellate court cannot say that the court erred in its ruling.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2907; Dec. Dig. ☞683.]

4. APPEAL AND ERROR ☞1057(1)—HARMLESS ERROR—ADMISSION OF HEARSAY.

In a suit for damages for defendant's breach of its contract to sell and deliver bran to plaintiff, error, if any, in overruling an objection to the testimony of the plaintiff and the broker as to the sale on the ground that it was hearsay, and that the telegrams, letters, etc., were the best evidence of the transaction, was harmless, where those documents were put in evidence and established the contract of sale.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4194–4196; Dec. Dig. ☞1057(1).]

5. APPEAL AND ERROR ☞1067 — HARMLESS ERROR—REFUSAL OF INSTRUCTIONS.

In such suit, the refusal to instruct on issues not controverted under the evidence was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. ☞1067; Trial, Cent. Dig. § 475.]

6. APPEAL AND ERROR ☞1064(1)—HARMLESS ERROR—INSTRUCTION ON DAMAGES.

In a suit for damages from a breach of a contract to sell and deliver bran, where the record showed that plaintiff purchased it at the market price, an instruction that the damage was the difference between the market value of bran during the time for delivery and the contract price was not objectionable on the ground that the correct measure of damages was the difference between the contract price and the price actually paid.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4219; Dec. Dig. ☞1064(1); Trial, Cent. Dig. § 553.]

7. APPEAL AND ERROR ☞1151(2)—REVIEW—AMOUNT OF RECOVERY.

In such suit, where the pleadings alleged aggregate losses to the amount of $975, a verdict and judgment allowing for loss of profits in the sum of $1,000 would be reformed and reduced to the amount of recovery claimed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4498–4500, 4503–4505; Dec. Dig. ☞1151(2).]

Error from District Court, Tarrant County; Marvin H. Brown, Judge.

Suit by S. F. Scattergood & Co. against E. R. and D. C. Kolp. Judgment for plaintiff, and defendants bring error. Reformed and affirmed.

Flournoy, Smith & Storer, of Ft. Worth, for plaintiffs in error. Baskin, Dodge & Eastus, of Ft. Worth, for defendant in error.

DUNKLIN, J. Upon the occasions hereinafter mentioned, E. R. & D. C. Kolp were wholesale dealers in grain and mill products,

having an office and place of business in St. Louis, Mo., and also in Ft. Worth, Tex.

On June 21, 1910, Louis J. Jones, their manager in charge of the St. Louis office, for and in their behalf, contracted with the partnership firm of S. F. Scattergood & Co., doing business in Philadelphia, to sell them 30 cars of bran, of 20 tons each, 10 cars to be delivered during the month of July, and the same amount during each of the months of August and September following. The installment for July was delivered in accordance with the contract, but the Kolps refused to deliver the other two installments. Scattergood & Co. then instituted this suit against them to recover the alleged profits they would have realized but for such refusal, fixed at the difference between the contract price and the prices they were compelled to pay for the bran on the market; and from a judgment in their favor the defendants have prosecuted this writ of error.

[1, 2] The principal defense urged to the suit was that Louis J. Jones had no authority from defendants to bind them by the contract alleged and upon which the recovery was allowed.

The evidence showed without controversy that the alleged contract was in fact made by Louis J. Jones, acting as the manager of the business of the Kolps, in St. Louis, through Wm. P. Brazer, a broker residing in Philadelphia, acting upon telegraphic instructions from Jones, and that after it was made by the broker it was confirmed in writing by Jones, the telegrams and the written confirmation being introduced in evidence. That proof was procured through depositions of different witnesses, one of whom was Jones himself, who also testified as follows:

"During the month of June, 1910, I was manager of the St. Louis office of E. R. & D. C. Kolp, and as such manager my duties were to transact regular grain and feed business, buying and selling grain on the St. Louis markets. I opened up the St. Louis office as manager in December, 1909, and continued as manager of said office until August 1, 1910. I had a written contract with E. R. and D. C. Kolp giving me authority to act as manager of the St. Louis office. This contract was made out in duplicate, E. R. & D. C. Kolp, at Ft. Worth, having the original, and I, at the time, had a duplicate, although I cannot say at this time whether I still have it in my possession or not."

The defendants objected to those answers of the witness, on the ground that the written contract of employment referred to was the best evidence; and, further, that the alleged agency could not be established by statements of the agent after the termination of his employment; and error has been assigned to the action of the court in overruling the objection.

The defendants introduced in evidence their written contract with Jones employing him as general manager of their St. Louis office, and containing the following stipulation:

"This contract to be in force until June 15, 1910, and if, at the time said E. R. & D. C. Kolp take their annual inventory, said Jones is in their employ and in charge of the St. Louis office, the profits of said office for the period covered by this contract will be divided as follows:"

The following correspondence was also introduced in evidence: Letter from Scattergood & Co. to the Kolps dated August 25, 1910, demanding shipment of the 10 cars of bran due for August under the contract of sale made by Jones. Letter from the Kolps in reply, dated August 27, 1910, containing the following:

"With reference to the trade made with you by Mr. Jones from St. Louis, will state that within the last few days we have looked carefully into this matter, and find that he entered into a speculative deal with you, contrary to his contract with us and in direct violation of his instructions. When we learned of these speculative sales he made on June 21st, we wired him instantly to cancel them.

"We do not believe you have a valid contract against us for this bran, and, until we are shown to the contrary, we cannot agree to ship.

"We might say, further, that Mr. Jones plunged into the rankest kind of speculation, selling 200 cars of bran short, which, as before stated, was without our authority, in direct violation of our instructions and also our wired orders to cancel these purported sales."

The statements last copied impliedly admit that Jones was defendant's general manager, and it was shown by other testimony, which was uncontroverted, that the sale to plaintiffs was not such a deal as the Kolps in their letter claimed Jones was not authorized to make.

In view of that admission, and the failure of either of the defendants to testify on the trial, and of the further uncontroverted proof that Jones in fact continued as manager of the St. Louis office until August 1, 1910, after furnishing the 10 cars of bran contracted to be delivered in July, thus established beyond controversy the authority of Jones to make the contract, the error, if any, in the ruling now under discussion was harmless. It might be added, further, that, at all events, the statement that Jones had continued to hold the position of manager until August 1st was not subject to the objections urged, and the rule is well settled that, if a part of testimony which is objected to as a whole is admissible, there is no reversible error in overruling the objection.

[3] The purchases made by plaintiffs to supply the bran which defendants failed to furnish during the months of August and September, the prior demands therefor made of defendants, and the prices which plaintiffs were compelled to pay were all established beyond controversy, in part by depositions of different witnesses, and in part by documentary evidence. Defendants objected to several of those depositions, upon the ground that they were not taken by officers authorized by law to take them nor properly certified; but there is no showing in the record

that the facts so alleged as a basis for the objection were true, and in the absence of such a showing we are unable to say that the court erred in the ruling.

[4] Another objection urged to the testimony of plaintiff S. F. Scattergood and the broker, W. P. Brazer, relative to the sale in controversy, was that it was hearsay, and that, as all negotiations between them and Jones were by telegrams and letters, those documents would be the best evidence of such transactions. As those documents were introduced in evidence and established the contract of sale beyond controversy, there was, at all events, no reversible error in the ruling.

[5] Complaint is made of the refusal of the court to submit certain special issues requested by defendants, viz. when did plaintiffs give instructions for the August and September shipment, when did they buy to fill these orders, and what prices did they pay? Under the evidence those were not controverted issues and no harm to defendants resulted from a failure to submit them.

[6] The measure of damages submitted to the jury and found by them was the difference between the market value of bran during the months of August and September and the contract price. Complaint is made of that instruction on the ground that the correct measure of plaintiffs' damages would be the difference between the contract price and the prices actually paid. The record conclusively shows that plaintiffs purchased the bran at market prices; hence the defendants were accorded the full benefit of that rule for measuring the damages, and are in no position to complain of harm by the submission of the issue in that form.

We do not concur in the contention made that the depositions of plaintiffs S. F. Scattergood show that plaintiffs supplied the bran due in August and September for less than the contract price. A proper construction of the exhibits attached to his depositions conclusively supports the judgment.

[7] But we are of the opinion that the judgment is for a greater amount than was warranted by plaintiffs' pleadings, according to which the aggregate losses sustained by them was $975, while by the verdict and judgment they were allowed for loss of profits in the sum of $1,000. Accordingly the judgment will be so reformed as to reduce the amount of recovery to $975, with interest thereon at the rate of 6 per cent. per annum up to December 3, 1914, the date of trial in the court below; interest on $450 of said sum to be computed from September 7, 1910, and on $525 from September 17, 1910.

All other assignments of error are overruled.

Reformed and affirmed, and costs of appeal taxed against defendants in error.