HAYS–SAMMONS HARDWARE CO. v. SANER et al. (No. 7757.)

Court of Civil Appeals of Texas. San Antonio. April 13, 1927.

On Rehearing, May 11, 1927. Further Rehearing Denied June 22, 1927.

1. Principal and agent ⬤➠123(3)—Evidence that supplies purchased by ranch manager were necessary and for sole benefit of ranch held to warrant finding that manager was authorized to bind owners therefor.

Evidence that supplies purchased by ranch manager were necessary for the upkeep of the ranch and were used for the sole benefit of the ranch *held* to warrant finding that manager was justified in making the purchases and was acting within his authority, rendering ranch owners liable.

2. Principal and agent ⬤➠133—That charges on seller's books for ranch supplies were in agent's name held not to preclude recovery from principals.

In seller's action for supplies sold to ranch manager, the fact that the charges were made in the manager's name, and not in that of the ranch owners, *held* not to prevent recovery from the owners.

On Motion for Rehearing.

3. Appeal and error ⬤➠1175(5)—Where case is reversed but testimony fully developed in trial, judgment will be rendered (Rev. St. 1925, art. 1856).

Under Rev. St. 1925, art. 1856, where a case is reversed but all facts were fully developed in the trial court, judgment will be rendered in favor of the appellant.

Appeal from District Court, Hidalgo County; J. E. Leslie, Judge.

Suit by the Hays-Sammons Hardware Company against J. M. Saner and others. Judgment for defendants, and plaintiff appeals. Reversed and rendered.

D. W. Glasscock, of Mercedes, and J. Q. Henry, of Mission, for appellant.

E. A. McDaniel, of McAllen, and D. F. Strickland, of Mission, for appellees.

COBBS, J. Appellant sued appellees Mrs. J. S. Daugherty, Mrs. Estelle Judd, and John T. Judd, as owners of the ranch commonly known as the "Wells ranch," and against J. M. Saner in the capacity of agent for said parties.

The suit was to recover against all the defendants the sum of $1,277.50, together with interest from September 1, 1924, at the rate of 6 per cent. per annum, for goods, wares, and merchandise sold and delivered to said J. M. Saner in his capacity as agent and general manager of said Wells ranch.

These goods were alleged to have been furnished and actually used by said manager and agent on said ranch premises, consisting of 80,000 acres, for the purpose of keeping it in proper condition to furnish to lessees the pasturage and water for the purpose of running stock thereon for the benefit of the ranch and the owners.

An attachment was sued out, issued, and levied upon the lands of the owners of the ranch.

The theory upon which this appeal is based is upon two propositions. The first is that the goods were purchased by J. M. Saner, acting within the scope of his agency and general authority for the said ranch; creating the debt was for the benefit of the owners.

It is undisputed that the goods sold were used upon and for the sole benefit of the Wells ranch, and not one dollar thereof was

---

⬤➠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

used for the personal benefit of Saner. That the transaction of the character stated covered a period of over 4 years and up to July, 1924. The employment of Saner in the capacity stated is not denied, the denial going only to his authority to purchase the goods on the account of his principal. The account was charged in the name of J. M. Saner, as a matter of convenience for the ranch supplies that he took to the Wells ranch; not charged to J. M. Saner as an individual charge, distinct from the owners of the ranch, for it was merchandise purchased to fix up the windmills and other improvements to take care of the Wells ranch, at which time a great many cattle were out there and placed thereupon for grazing purposes. The particular items purchased for the individual and personal use of Saner are not included in the account sued upon—only those included that went to and were for the use of the Wells ranch.

Saner was in charge of the ranch about 4 years as manager of the ranch and running it. This was common knowledge that he was looking out for all the cattle thereon and keeping up the ranch. Appellant said:

I did not look to him individually to pay out of his own funds, but to him who was acting as agent to fix and upkeep the ranch, though he, as agent, paid on the account $1,500.

The owners knew that the place was run down and many cattle were grazed thereon and all the improvements were badly needed. They furnished no money to care for the place, and Saner was looked to to make the improvements so as to carry 5,000 cattle, or more, on the ranch. This required money to make the comparatively large amount of repairs, replacements, and supplies to get the place in proper condition and to care for them. The owners knew that the improvements were necessary, and knew they were being furnished, and knew or could by the exercise of ordinary care have known that his agent, Saner, was purchasing and securing them from appellant. Their agent was performing the same service he had performed for a period of more than 4 years; on account of the sale of the property during one year he was not acting for them. The place was returned to appellees and Saner was again employed in the same position; however, his power to purchase supplies for the ranch was somewhat limited. This change admittedly was not called to the attention of appellant, but Saner continued as before in his handling of this big 80,000-acre ranch and caring for the property and keeping it up.

Appellees' reason for not paying this debt is thus stated:

"As to whether my reason for refusing thus far to pay this account lies in the fact that I was dissatisfied with the amount of rental that East had paid and dissatisfied with the account and reports that Saner had made to the owners, I was dissatisfied with the whole thing; not only dissatisfied with Saner and East, but with the whole thing. As to whether it is because of my dissatisfaction with Saner and his methods and his failure to account and the terms on which he would make these leases that I refuse to make this payment, I will ask you if you would like to have some one running an 80,000-acre ranch for you who would refuse to let you know what was spent or what the revenue was for 5 years. I refused to pay these items on the same principle I refuse anything that I don't think I owe. I don't think I owe it, and that is why I refuse to pay it. That is the reason that I refuse to pay it, because I don't think I owe it. If it develops that in fact these goods and material did go on the ranch and did go for our benefit, as to whether I will pay it, will say that when I am convinced that I owe a bill, I will pay it."

Saner testified:

"I heard the testimony in respect to the rental contract made with Mr. East and other persons to pasture cattle on the land, and the condition of the ranch to take care of 4,800 head of cattle was not adequate. To bring those cattle there meant building of pens and repairing of the stuff that goes on windmills and wells. I am familiar with where all those items were used. It was necessary to have them on the windmills to supply water for the cattle. * * * I used these items for that purpose.

"There was no question about my authority and nothing said by Mr. Judd that I know of in purchasing this from Hays-Sammons. He told me he was glad I was doing something, and said 'Let's get the old ranch fixed up so we can sell it and get rid of it.'

"Prior to the purchasing of these materials and supplies and before the cattle went on the ranch, the biggest part of the windmills were fairly good. * * * What I mean is that the windmill wheel was down and a section was broken out of this one and that one and the other one, but none of them were flat, and there was some rusty and worn-out valves. They were not adequate to take care of the cattle that were coming on the ranch under those leases. These materials and supplies as listed were used for the purpose of placing the mills in condition. None whatever of these materials and supplies went on any other or different ranch than the Wells ranch.

"As to whether I ever had any discussion with Mr. Sammons or anybody else connected with Hays-Sammons Company as to exact nature of my authority, they never questioned me about anything. * * * During all the time that I was manager of the ranch, I carried an account with Hays-Sammons people and bought my material, merchandise, and supplies.

"It is in evidence that a payment of $1,500 was made by me (Saner), and that the money came from rental from cattle on the Wells ranch from T. T. East."

[1] The facts in this case justify a finding that Saner was acting and authorized to act in the capacity of agent and general manager of the cattle ranch and justified in making the purchases he did and to bind appellees. The goods, wares, etc., were necessary for the ranch and used there for appellees' benefit.

Not one dollar purchased elsewhere, nor for the agent's benefit. Collins v. Cooper, 65 Tex. 460; Bergere v. Parker (Tex. Civ. App.) 170 S. W. 808; Hayward Lbr. Co. v. Cox (Tex. Civ. App.) 104 S. W. 403.

[2] It makes no difference that the books of appellant show the charges were made in the agent's name, and not in that of the owner; still the proof shows that the goods were purchased for the benefit of the principal as necessaries for their ranch, delivered there, and used for their benefit with their knowledge.

The account was carried in that form as a convenience, and no items thereon were purchased for the agent's benefit.

For the reasons given, the court erred in rendering judgment against appellant, which is here now reversed and remanded for another trial.

### On Motion for Rehearing.

It is quite clear that in the trial of this cause in the district court all the facts were fully developed, including the issue of the proper amount for the judgment, to wit, $1,277.50, together with 6 per cent. interest per annum from September 1, 1924.

It further was established that an attachment was sued out, issued, and levied upon the land of the owners of the ranch to secure the claim.

The evidence disclosed that J. M. Saner was a disclosed agent but he did not appeal, so that would be no reason for this court to render any judgment against him, and the motion of appellee is overruled.

[3] As this case comes within the rule provided by article 1856, R. S., and the testimony was fully developed, we see no reason to remand this case; therefore we set aside our former order remanding said cause and here now reverse the judgment of the trial court and render judgment in favor of appellant against appellee for the sum of $1,277.50, together with interest thereon from September 1, 1924, at the rate of 6 per cent. per annum, and for foreclosure of the attachment lien upon the property described, and that it be advertised and sold at public outcry and the proceeds applied in accordance with the terms of the law.

Reversed and rendered.