# DESDEMONA GASOLINE CO. OF TEXAS v. GARRETT.

### No. 1462.

Court of Civil Appeals of Texas. Eastland.

Jan. 3, 1936.

Rehearing Denied Jan. 31, 1936.

Goree & Rice, of Fort Worth, and Frank Judkins, of Eastland, for appellant.

Grisham Bros., of Eastland, for appellee.

GRISSOM, Justice.

The appellee, Edgar Garrett, sued J. F. Stillwell and the Desdemona Gasoline Company of Texas, a corporation, for damages alleged to have resulted from the explosion of a gasoline tank while Garrett was attempting to weld it. The suit resulted in a judgment for appellee against both defendants for the sum of $2,250. Desdemona Gasoline Company of Texas, hereinafter referred to as the company, appealed. Stillwell did not appeal.

Appellee alleged that Stillwell and Moss, superintendent of the company's plant at Desdemona, came to his home at night and requested him to go to his shop in the town of Desdemona for the purpose of welding a 925-gallon gasoline tank belonging to Stillwell; that Moss represented to Garrett that the tank was being duly and properly steamed at the company's refinery, which meant that by the use and application of steam all gasoline and gas was being eliminated and removed from said tank; that Stillwell and Moss requested Garrett to weld the tank, and that, relying upon the statements that the tank would be and had been properly steamed, he attempted to weld it; that it had not been properly steamed and there was present in the tank gasoline and gas; that when he attempted to weld it the explosion resulted, seriously and permanently injuring him; that the company was engaged at Desdemona in the manufacture and sale of gasoline; that Stillwell was its regular customer using the tank in the transportation of gasoline from the company's plant; that both of the defendants were interested and concerned in having the repair work done in order that Stillwell might continue to use the tank in the transportation of gasoline from the company's plant; that both of the defendants were interested and concerned in

having the repair work done in order that Stillwell might continue to use the tank in the transportation of gasoline from the company's plant; that the defendants jointly undertook the work of steaming the tank; that the company furnished its facilities at its plant for use in such steaming process, and that Moss was acting for the company in furnishing to its customer, Stillwell, a usual and customary service rendered by the company; that the company, through Moss, undertook to assist in and supervise the steaming process, and the steaming was done and performed by Stillwell and Moss jointly. That both Stillwell and Moss were well aware of the great danger incident to such welding in the event gasoline or gas was permitted to remain in the tank, and that it was necessary before same was delivered to the welder that the tank should be thoroughly and efficiently steamed and all gasoline or gas eliminated therefrom. That it was customary and necessary in preparing a tank of the size owned by Stillwell to keep the tank under proper steam pressure for a period of at least 2 or 2½ hours, and that the exercise of ordinary care in such work required that such tank be so steamed for such period of time. Appellee alleged that appellant and Stillwell, regardless of their duty, failed to steam the tank in an efficient and workmanlike manner, and failed to steam the same under sufficient pressure and for a sufficient length of time to remove and eliminate therefrom all gasoline and gas and discontinued the steaming process while there yet remained in the tank a quantity of gasoline and gas, and in such condition delivered the tank to appellee with the request that he weld it. That Stillwell and the company were guilty of negligence in failing to steam the tank with sufficient thoroughness to remove the gasoline and gas, and that such negligence was a proximate cause of plaintiff's injuries. Appellee further alleged a general custom and practice among concerns such as the defendant company to steam the tanks of its customers, free of charge; that such custom prevailed in the immediate locality of the defendant company's plant, in the county and throughout the country. That Moss, who was the general superintendent of the company at Desdemona, at the time he came to appellee's home and requested him to go to his shop and weld the tank for the company's customer, Stillwell, stated to appellee that the tank was being properly steamed, which statement he alleged amounted to a representation that the tank would be properly steamed, and when delivered to Garrett would be in a proper condition to be welded; that Moss knew that Garrett would accept and rely upon his said representations and promise, and that he did so. Appellee further alleged in detail the acts and representations of the appellant company through its agents and employees, its negligence, an alternative plea, etc.

The defendants answered only by a general denial.

The special issues submitted to the jury, and its answers thereto, are as follows:

"Special Issue No. 1–A: Do you find from a preponderance of the evidence that the defendant, J. F. Stillwell, acting either alone or in concert with any other person or persons, undertook to steam the tank on the occasion in question in order that said tank might be welded? Answer: Yes.

"Special Issue No. 1–B: Do you find from a preponderance of the evidence that the said J. F. Stillwell, acting either alone or in concert with some other person or persons, failed to steam the tank with sufficient thoroughness and for a sufficient length of time to remove therefrom all gasoline and gas? Answer: Yes.

"Special Issue No. 1–C: Do you find from a preponderance of the evidence that such failure, if any, to steam said tank with sufficient thoroughness to remove therefrom all gasoline and gas, constituted negligence on the part of the said defendant, J. F. Stillwell? Answer: Yes.

"Special Issue No. 1–D: Do you find from a preponderance of the evidence that such negligence, if any, on the part of said defendant, J. F. Stillwell, was a proximate cause of the injuries, if any, sustained by the plaintiff, Edgar Garrett? Answer: Yes.

"Special Issue No. 2–A: Do you find from a preponderance of the evidence that when the tank in question was being steamed Denny Moss promised the plaintiff that the said tank would be properly steamed for welding? Answer: Yes.

"Special Issue No. 2–B: Do you find from a preponderance of the evidence that after having made said promise, if he did make same, the said Denny Moss failed to see that the said tank was properly steamed for welding? Answer: Yes.

"Special Issue No. 2–C: Do you find from a preponderance of the evidence that

such failure on the part of the said Denny Moss, if any, constituted negligence? Answer: Yes.

"Special Issue No. 2-D: Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the injury sustained by the plaintiff, if any? Answer: Yes.

"Special Issue No. 2-E: Do you find from a preponderance of the evidence that the said Denny Moss, in promising the plaintiff that the tank would be properly steamed for welding, if he did make such promise, was acting within the course of his employment with the defendant, Desdemona Gasoline Company of Texas, as the term 'Course of His Employment' is defined hereinabove? Answer: Yes.

"Special Issue No. 3-A: Do you find from a preponderance of the evidence that any servant or employee of the defendant, Desdemona Gasoline Company of Texas, undertook to assist in the process of steaming the tank on the occasion in question? Answer: Yes.

"Special Issue No. 3-B: Do you find from a preponderance of the evidence that after such servant or employee of the said defendant company undertook to assist in such steaming process, if he did so, undertake, such servant or employee failed to see that the tank was steamed with sufficient thoroughness to remove therefrom all gasoline and gas? Answer: Yes.

"Special Issue No. 3-C: Do you find from a preponderance of the evidence that such failure, if any, on the part of the said servant or employee of the defendant, Desdemona Gasoline Company of Texas, constituted negligence? Answer: Yes.

"Special Issue No. 3-D: Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the injuries suffered by the plaintiff, if any? Answer: Yes.

"Special Issue No. 3-E: Do you find from a preponderance of the evidence that such servant or employee, if any, of the said defendant Company, in so undertaking to assist in the steaming process of said tank, if he did so, was acting within the course of his employment as such servant or employee of said Desdemona Gasoline Company of Texas? Answer: Yes.

"Special Issue No. 4: From a preponderance of the evidence, what amount of money, if any, if paid now in cash, would reasonably and fairly compensate the plaintiff, Edgar Garrett, for the said injuries, if any, sustained by him on the occasion in question? Answer: $2250.-00.

"Special Issue No. 2-A requested by the Plaintiff: Do you find from a preponderance of the evidence that the defendant Desdemona Gasoline Company, when it permitted the tank to be steamed at its plant on the occasion in question, failed to cause such steaming process to be supervised by one of said defendant Company's officers or employees who was experienced in such work? Answer: Yes.

"Special Issue No. 2-B requested by the Plaintiff: Do you find from a preponderance of the evidence that such failure on the part of the defendant Desdemona Gasoline Company of Texas to cause such supervision by one of its experienced employees or officers (if it did so fail) constituted negligence? Answer: Yes.

"Special Issue No. 2-C requested by Plaintiff: Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the injuries, if any, suffered by the plaintiff? Answer: Yes."

■ Appellant's first assignment of error complains of the failure of the court to instruct the jury to return a verdict for the defendant. Under this assignment, it is contended that the evidence shows as a matter of law that the plaintiff was guilty of contributory negligence in failing to exercise ordinary care to ascertain whether the gas tank which he undertook to weld contained explosive substances, and that plaintiff's own pleading and proof show that he exercised no care. The statement of facts reveals testimony to the effect that Moss, the superintendent of the plant, went to Garrett's house at night, called him out and asked him to weld the tank; that Moss said, "All right we will get it ready," or said, "He was getting it ready for welding." "I asked him if it was ready and he said 'no,' but he said that they were getting it ready, said they were steaming it." That later, Garrett went to the company's plant where he found Moss, Stillwell, and his driver and Garrett testified while at the plant they asked if he would weld it, and he told them he "would weld it when Denny Moss O.K'd. it." That he made this statement to Stillwell

in the presence of Moss; that appellant then went to his shop to make preparations for welding the tank. That later the tank was brought to Garrett's shop by Stillwell. Garrett asked Stillwell if it was O.K. and he said, "Yes, ready to work." Garrett said "Ready to weld?" and Stillwell said, "It is all right." That Moss had prepared tanks for Garrett to weld before. Moss testified: "Q. Had you ever steamed tanks for Edgar Garrett to weld? A. I have steamed a number that he welded."

That during the four years he had been superintendent of the plant he had steamed six or eight tanks belonging to the company's customers which Garrett had welded. That he was interested in selling gas to Stillwell and that Stillwell had to have a tank that would hold gas to put it in before he could sell it to him. Appellee testified that he relied upon the promises of Moss that the tank would be properly steamed for welding, that he believed Moss's knowledge of the manner and method of steaming tanks was superior to his, that the tanks he had welded before the injury· which had been steamed by Moss were brought to him in proper condition for welding. There was further testimony to the effect that the explosion occurred on a cold night in February, that the tank was brought some distance from· the company's plant to appellee's shop; that at the time it arrived the tank was still warm but was cooling. That at this stage of the proceedings air was being drawn into the tank, and that odors were not then being expelled from the tank and would not at that time have been detectable had Garrett attempted to smell at the openings of the tank; that he did place his hand upon the tank and found it was warm, that this was one of the usual tests. Under this state of record, we are unable to hold as a matter of law that the appellee was guilty of contributory negligence, and the assignment is overruled. Houston & T. C. Ry. Co. v. Harris, 103 Tex. 422, 128 S.W. 897.

Appellant, by its seventh, eighth, and ninth assignments of error, complains of the refusal of the court to submit to the jury its special requested issues Nos. 6, 7, and 8, on the question of contributory negligence, which issues, omitting the formal parts, are as follows: .

"Gentlemen of the jury, was the plaintiff, Edgar Garrett, guilty of negligence, in failing to use diligence to ascertain whether or not the gasoline tank which he attempted to weld for J. F. Stillwell, contained any inflammable substance. Answer Yes or No, as you find the facts to be.

"If you have answered the foregoing question in the affirmative, then you will answer the following question: Did such negligence contribute to his injuries, if any. Answer yes or no, as you find the facts to be.

"Do you find from a preponderance of the evidence, that plaintiff, Edgar Garrett, received his injuries solely because of his own negligence. Answer yes or no.

"In the event you have answered the foregoing question No, then you will answer the following question: Was the plaintiff himself guilty of negligence which contributed to his injuries. Answer yes or no.

"Could the plaintiff, Edgar Garrett, have discovered the gas in said tank, before he began welding same, by the use of ordinary diligence. Answer yes or no from the evidence introduced before you in this case."

We believe that the court did not err in failing to submit said issues (1) because the defense of contributory negligence was not pleaded, and (2) because the requirements of the law with reference to the preparation and presentation of requested issues were not complied with.

■ (1) The burden of proof is upon the defendant to establish the contributory negligence of the plaintiff. Houston & T. C. Ry. Co. v. Harris, 103 Tex. 422, 128 S.W. 897; Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Tex. 152,· 30 S.W. 902, 28 L.R.A. 538.

In the case of Houston & T. C. Ry. Co. v. Anglin, 99 Tex. 349, 89 S.W. 966, 968, 2 L.R.A.(N.S.) 386, it was contended "That the evidence of the plaintiff and of his own witnesses exposed him to a suspicion of contributory negligence, and that therefore the burden was upon him [plaintiff] to show that he was not guilty of such negligence."

The Supreme Court, in an opinion by Chief Justice Gaines, answered the contention as follows: "That rule was at one time recognized by this court as the law of this state, but it is now definitely settled that in every case in which the plaintiff seeks to recover of defendant on the ground of negligence of the defendant, and the defendant relies upon the de-

fense of contributory negligence, in order to maintain that defense, it must appear by a preponderance of the evidence that the plaintiff was guilty of such negligence."

In the case of St. Louis Southwestern Ry. Co. of Texas v. Gammage (Tex. Civ.App.) 96 S.W. 645, 646, in which a writ of error was refused, it is said: "It seems to be settled by the decisions of this state that if the defendant relies upon contributory negligence not developed by the plaintiff's case, he must, in order to make such defense available, plead it."

■ Under the situation here disclosed, we are of the opinion that the court was not required to submit to the jury the defensive issue of contributory negligence which was not pleaded. Missouri, K. & T. Ry. Co. of Texas v. Whitsett (Tex.Civ. App.) 185 S.W. 406; Roscoe S. & P. Ry. Co. v. Taylor (Tex.Civ.App.) 191 S.W. 1175; Missouri-Pac. Ry. Co. v. Waugh (Tex.Civ.App.) 74 S.W.(2d) 554; 30 Tex. Jur. p. 794, § 122; Fox v. Dallas Hotel Co., 111. Tex. 461, 240 S.W. 517, 522; Security Banking & Inv. Co. v. Flanagan (Tex. Civ.App.) 241 S.W. 702; Liner v. United States Torpedo Co. (Tex.Com.App.) 12 S. W.(2d) 552, reversed on other grounds (Tex.Com.App.) 16 S.W.(2d) 519; 45 C. J. p. 1115, § 692.

(2) "Where one is put to his request for an issue in form, his request must be complete in every essential. It is never error for the trial court to refuse a request that would be ineffectual for want of some indispensable element, nor is it ever error to refuse a requested instruction or issue that would be misleading, or unintelligible to the jury. * * * In short, the request should be such as that it would be the duty of the court to submit it as presented." Speer, Law of Special Issues in Texas, § 251, pp. 370, 371.

Also, see Fort Worth & D. C. Ry. Co. v. Amason (Tex.Com.App.) 276 S.W. 162; Robinson v. Ætna Life Ins. Co. (Tex.Com. App.) 276 S.W. 900; Southwestern Tel. & Tel. Co. v. French (Tex.Civ.App.) 245 S.W. 997; Texas & N. O. Ry. Co. v. Diaz (Tex.Civ.App.) 234 S.W. 919; Texas & P. Ry. Co. v. Wylie (Tex.Civ.App.) 36 S.W.(2d) 238; Employers' Cas. Co. v. Watson (Tex.Civ.App.) 32 S.W.(2d) 927; Shaw v. Shaw (Tex.Civ.App.) 28 S.W. (2d) 173; City of Wichita Falls v. Crummer (Tex.Civ.App.) 71 S.W.(2d) 583, 585, and Northcut v. Magnolia Pet. Co.,

90 S.W.(2d) 632, decided by this court on December 20, 1935.

■ As illustrative of the point involved, we call attention to defendant's requested special issue No. 6. We think it is defective in that it assumes appellee failed to use diligence to ascertain whether or not the gasoline tank contained inflammable substance. It is incomplete for the reason that it does not place the burden of proof. An answer thereto would not affect the judgment for the reason that a finding that the plaintiff was guilty of negligence would not constitute a bar to the judgment rendered without a further finding that such negligence was a proximate cause of appellee's injury, and there was no issue submitted or requested as to whether such negligence, if any, was the proximate cause of the injury.

■ Appellant assigns as error the action of the court in permitting the witness Whitworth to testify, over objection, that he had observed the appellee before and since his injury, and that appellee was not as strong after as before the accident. Testimony of other witnesses to the same effect was admitted without objection. For instance, the witness A. C. Roberts testified that appellee was a strong man before the injury; that he had observed him since his injury and "he did not seem to be as strong as before." Appellant is not entitled to a reversal on account of the admission of the evidence complained of, even if same otherwise constituted reversible error, where the same testimony was introduced without objection. D. M. Osborne & Co. v. Gatewood (Tex.Civ.App.) 74 S.W. 72; Yellow Cab Co., Inc., v. Treadwell (Tex.Civ.App.) 87 S.W.(2d) 276.

■ Appellant assigns as error the submission of special issue No. 2–E. This issue was excepted to on the ground that there was no testimony showing that Moss was acting within the course of his employment in steaming or promising to steam, or helping to steam, the tank in question, because all the testimony showed that if Moss did such acts, he was acting outside the scope and apparent scope of his employment. It is undisputed that Moss was the plant superintendent and the general agent in charge of appellant's business of manufacturing and selling gasoline at Desdemona. That Moss had no special instructions as to his duties. That

he had held such position for four years. That the president of the corporation lived at Fort Worth, a considerable distance from the plant, and that Moss generally operated the plant as his judgment dictated. That during the four years he had been in charge of the company's plant at Desdemona he had steamed about eight tanks for welding by appellee for customers hauling gasoline from appellant's plant, and otherwise; that these tanks were owned by customers of appellant; that one of the reasons for steaming the tanks was to assist in the sales by appellant and to promote the general welfare of the company. While it is true that the testimony of Moss might reasonably be construed as a statement to the effect that he merely furnished the facilities of the company's plant to its customers, yet we believe the testimony of Moss and other witnesses was susceptible of the construction hereinbefore given it, and that a jury had the right to place that construction on it, and, further, that the jury was at liberty to believe a portion and disbelieve another portion of the testimony of the witnesses on this point.

On the question of proof of agency and whether or not an act of an agent is within the scope of his employment, it is stated in 2 Tex.Jur. § 122, p. 520, that "Evidence of a course of dealing is often available and controlling,—but a single prior transaction does not constitute a course of dealing."

At section 114, p. 512, of the same volume, it is stated: "It is a general rule of evidence that similar transactions with different parties may not be shown to prove the transaction in controversy, the maxim being res inter alios acta alteri nocere non debet. The law of agency furnishes important exceptions to this rule. * * * With stronger reason, evidence of similar transactions between the same parties is admissible as tending to show authority."

■ Furthermore, a general agent of a corporation is presumed to be authorized to do those things usual or necessary in the operation of such business by one occupying the position in which the agent is placed, and the principal may not close its eyes to what the agent is continually doing in the exercise of his position. Colorado Canal Co. v. McFarland & Southwell (Tex.Civ.App.) 94 S.W. 400; Collins v. Cooper, 65 Tex. 460; Schram v. Strouse (Tex.Civ.App.) 28 S.W. 262.

For other authorities sustaining the proposition generally that evidence of a course of dealing long continued between the parties is available as proof to establish the authority of an agent, see 2 C.J. § 536, p. 853 and § 218, p. 576, et seq.; Brennan & Son v. Dansby, 43 Tex.Civ.App. 7, 95 S. W. 700; Birge-Forbes Co. v. St. Louis & S. F. Ry. Co., 53 Tex.Civ.App. 55, 115 S. W. 333; Valiquette v. Clark Bros. Coal Min. Co., 83 Vt. 538, 77 A. 869, 34 L.R. A.(N.S.) 440, 138 Am.St.Rep. 1104; National Bank of Republic v. Old Town Bank of Baltimore (C.C.A.) 112 F. 726; Missouri Pac. Ry. Co. v. Simons et al., 6 Tex.Civ. App. 621, 25 S.W. 996; Hays-Sammons Hardware Co. v. Saner et al. (Tex.Civ. App.) 296 S.W. 927; Kolp v. S. F. Scattergood & Co. (Tex.Civ.App.) 185 S.W. 329; Dagget v. Avis Hardware Co. (Tex. Civ.App.) 183 S.W. 20; R. H. Swartz Co. v. Minnesota Mut. Life Ins. Co. (Tex. Civ.App.) 293 S.W. 256; Denison v. Nunn (Tex.Civ.App.) 293 S.W. 838; McAlpin v. Cassidy, 17 Tex. 449; Magnolia Pet. Co. v. Guffey (Tex.Civ.App.) 59 S.W. (2d) 174.

The evidence discloses that during the four years Moss had served as the superintendent and manager of the plant at Desdemona in furtherance of the company's business the steaming facilities of the company had been loaned to its customers, or the employees and agents of the company at its plant had steamed out its customers' tanks or assisted in such steaming for the purpose of having them welded, and that such latter course of dealing had been had by the company acting through its general superintendent at Desdemona with the appellee, and that on all occasions prior to his injury appellee had found the tanks properly steamed and ready for welding. We think these facts constituted some evidence that Moss was acting within the course of his employment in the instant case.

■ Appellant, in its brief, states that although appellee alleged it was a general custom and usage among refineries selling gas to persons who carried it away in tanks to steam tanks for the customers, yet appellee made no such proof. The statement of facts reveals that appellee offered to make such proof on several occasions, but appellant's objections to such proffered testimony were sustained. We think such testimony was admissible for the purpose of showing the authority of Moss to do the

things appellee contends he did in this case. 2 Tex.Jur. § 116, p. 514, et seq. We believe the evidence was sufficient to authorize the submission of the special issues complained of, and the answers of the jury thereto. The testimony was conflicting and the jury decided the issues favorably to appellee.

Appellant objected to special issue No. 3–A "because it calls for a finding of the jury on 'a conclusion and a mixed question of law and fact and does not make clear what is meant by the phrase 'undertook to assist in the process of steaming the tank on the occasion in question.'" We think it evident that by the phrase it was meant to inquire whether an employee entered upon, attempted, endeavored, or tried to assist in steaming the tank; that it clearly referred to a physical effort or action, and not a contract; the agreement with Moss had been previously inquired about. 65 C.J. p. 1209; 8 Words and Phrases, First Series, p. 7163.

No reversible error appearing, the judgment of the district court is affirmed.